**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**William John BOURJAILY,**
**Defendant-Appellant.**

**No. 85–3058.**

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 4, 1985.
Decided Jan. 15, 1986.

James R. Willis, argued, Cleveland, Ohio, for defendant-appellant.

Ronald B. Bakeman, Asst. U.S. Atty., Cleveland, Ohio, Gregory C. Sasse, argued, Asst. U.S. Atty., for plaintiff-appellee.

Before LIVELY, Chief Circuit Judge, and MARTIN and JONES, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

William Bourjaily appeals his convictions for conspiracy to distribute and possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1),[1] 21 U.S.C. § 846 [2]

---

**1.** 21 U.S.C. § 841(a)(1) provides the following:

    (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

**2.** See note 2 on page 541.

and 18 U.S.C. § 2.[3] Bourjaily claims that statements of his codefendant, Angelo Lonardo, should not have been admitted as statements of a co-conspirator as provided by Rule 801(d)(2)(E) of the Federal Rules of Evidence. Because Lonardo exercised his right not to testify at trial, Bourjaily claims that even if Lonardo's statements were admissible under Rule 801(d)(2)(E), allowing the statements into evidence violated his sixth amendment right to confrontation. Bourjaily also claims that the evidence was insufficient to support findings of conspiracy and possession.

The majority of the evidence in this case was presented by testimony of FBI agents; testimony of an FBI informant, Clarence Greathouse; and several recordings of cryptic conversations between Greathouse and the codefendant, Angelo Lonardo. Greathouse testified that he arranged for a transfer of one kilogram of cocaine to Angelo Lonardo to be sold by "people" Lonardo was to select. On May 12, 1984, Greathouse, equipped with a body recorder, met with Lonardo to discuss the possibility of a sale. In this taped conversation, Lonardo indicated that he had talked to "the people" and they were interested. He then stated that the deal would be handled as had been done in the past. Later in the conversation, Lonardo said that he would "try to set some people up." He stated that his contacts did not know that Greathouse was his supplier and Lonardo wanted to keep it that way. Greathouse demanded one-half of the purchase price before delivery and requested that each of Lonardo's buyers purchase at least one-fourth of a kilogram. Lonardo agreed.

Greathouse testified that on May 17, 1984, he asked Lonardo for money and Lonardo responded that he would get in touch with "some people" and recontact Greathouse. He called Greathouse on May 19 to arrange for delivery of the money and the delivery occurred. Several other conversations occurred in the next few days as the deal was being finalized. All of these conversations were recorded. On May 24, Lonardo met Greathouse at the Sheraton Hopkins Hotel outside of Cleveland. Greathouse told Lonardo that the cocaine had arrived. In a taped conversation, Lonardo said that he would try to contact some people but that he had told them the deal was off because of a purchase price misunderstanding.

On May 25, Lonardo, in a taped telephone conversation, told Greathouse he had a "gentleman friend" present who "had some questions" to ask Greathouse. Lonardo indicated that he wanted Greathouse to call back immediately. The second call was not recorded but FBI agent Dorton listened to both sides of the conversation. Greathouse testified that he discussed how the gentleman was to pay, as well as the quality, the purity, the formation and the clarity of the cocaine. Agent Dorton confirmed that these topics were discussed. Later that day, in a taped conversation, Lonardo told Greathouse to park his car behind the Hilton Hotel and that Lonardo would be waiting for him in the lobby. Lonardo stated, "My friend will be out in his car and I'll just go over and you know."

FBI agents Fiatal and Dorton placed four quarter-kilogram bags of cocaine in a Sheraton laundry bag in Greathouse's car. Greathouse parked at the Hilton, entered

---

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. Cocaine is a controlled substance.

2. 21 U.S.C. § 846 provides the following:
  Any person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

3. 18 U.S.C. § 2 states the following:
  (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
  (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

and stood next to Lonardo. FBI agents Fiatal and Dorton testified that William Bourjaily was in the parking lot in a white car which was facing away from the hotel. Other FBI agents in a surveillance van stationed in the parking lot prior to Greathouse's arrival had observed Bourjaily drive around the parking lot, stop in different areas and examine the vehicles parked there. The agents stated that Bourjaily's car was at the end of the parking lot farthest from the hotel entrance when Greathouse arrived.

Greathouse arrived, entered the Hilton and gave Lonardo the keys to his car. Lonardo took the keys, walked to Greathouse's car, circled the car and walked to Bourjaily's car. Lonardo then walked back to Greathouse's car, unlocked the door, reached under the seat and removed the cocaine. As Lonardo neared Greathouse's car, Bourjaily turned his car around in the parking lot and moved to a point near Greathouse's car. Lonardo took the cocaine from the car and walked to Bourjaily's car. At least one FBI agent saw Lonardo hand the package of cocaine to Bourjaily and saw Bourjaily accept it. The FBI agents then arrested Bourjaily and Lonardo and recovered the cocaine from Bourjaily's car. They found, under Bourjaily's passenger seat, a leather bag containing $19,000 in cash. A receipt found in the bag was made out to Bill Bourjaily. They also found $2,000 in the glove compartment.

■■■ We believe the trial judge was correct in allowing Lonardo's statements to be admitted as statements of a co-conspirator as provided by Rule 801(d)(2)(E) of the Federal Rules of Evidence, which states:

(d) **Statements which are not hearsay.** A statement is not hearsay if—

. . . .

(2) **Admission by party-opponent.** The statement is offered against a party and is . . .

(E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

We have held that in order to have a co-conspirator's testimony admitted, it must be shown by a preponderance that a conspiracy existed, that the defendant against whom the hearsay is offered was a member of the conspiracy, and that the statement in question was made in furtherance of the conspiracy. *United States v. Vinson*, 606 F.2d 149, 152 (6th Cir.1979), *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980); *United States v. Enright*, 579 F.2d 980, 986 (6th Cir.1978). This determination need not be decided at the time the questionable evidence is offered. Rather, as the trial court here did, the court may wait until the United States' case is complete before making findings and ruling on its admissibility. *Vinson*, 606 F.2d at 153. The statements at issue may be considered by the court in determining whether the *Enright* requirements are satisfied.[4] *Id.* Here the court specifically found that the *Enright* requirements had been satisfied. We find no procedural error.

Substantively, the trial judge did not err in finding that the government had proved by a preponderance of the evidence that the *Enright* requirements were satisfied. Lonardo's conversations with Greathouse establish that Greathouse was to supply the cocaine and Lonardo was to line up buyer-distributors and to obtain partial payment from them. The conspiracy and Bourjaily's membership in it was preponderantly proved by these conversations, by Greathouse's telephone discussion with Lonardo's "friend" about the quality of the cocaine, and Lonardo and Bourjaily's actions in the Hilton parking lot. After talking with Lonardo, Bourjaily pulled his car nearer Greathouse's car so that the cocaine could be transferred by Lonardo easily. Bourjaily then accepted the cocaine from Lonardo. Lonardo's statements were made in furtherance of the conspiracy because they were recorded from conversations be-

---

**4.** The Supreme Court denied certiorari on this issue in *Means v. United States*, —— U.S. ——, 105 S.Ct. 541, 83 L.Ed.2d 429 (1984). *See also*

*United States v. Martorano*, 561 F.2d 406, 408 (1st Cir.1977), *cert. denied*, 435 U.S. 922, 98 S.Ct. 1484, 55 L.Ed.2d 515 (1978).

tween Lonardo and Greathouse in which they planned, negotiated, and organized the transaction.

■ Admission of Lonardo's statements does not violate Bourjaily's sixth amendment right of confrontation, though Bourjaily could not confront or otherwise cross-examine Lonardo because Lonardo exercised his right not to testify. In *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the Supreme Court held that the defendant's right to confrontation is protected if the hearsay statement sought to be used against the defendant has sufficient indicia of reliability and if the declarant is unavailable. *Id.* at 65–66, 100 S.Ct. at 2538–2539. The *Roberts* court stated that "reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Id.* at 66, 100 S.Ct. at 2539. Rule 801(d)(2)(E) provides that statements of co-conspirators are not hearsay for purposes of the rules. However, these statements are out-of-court assertions offered for their truth "and thus resting for ... [their] value upon the credibility of the out-of-court asserter." C. McCormick, *Handbook of the Law of Evidence*, § 246 at 584 (1972). These statements are thus traditionally considered hearsay and squarely covered by the *Roberts* requirements. *See* Lilly, *Notes on the Confrontation Clause and Ohio v. Roberts*, 36 U.Fla.L.Rev. 207, 229 (1984).

The circuits are split on the analysis to be followed in dealing with co-conspirator's statements.[5] Several circuits have adopted an approach in which co-conspirator statements admitted under Rule 801(d)(2)(E) are analyzed on a case-by-case basis for reliability and availability. *See United States v. DeLuna*, 763 F.2d 897, 909–10 (8th Cir. 1985); *United States v. Ammar*, 714 F.2d 238, 254–57 (3d Cir.), *cert. denied*, 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983); *United States v. Perez*, 658 F.2d 654, 660 & n. 5 (9th Cir.1981); *United States v. Wright*, 588 F.2d 31, 37–38 (2d Cir.1978),

*cert. denied*, 440 U.S. 917, 99 S.Ct. 1236, 59 L.Ed.2d 467 (1979).

We have held that evidence admitted as a co-conspirator's statement under Rule 801(d)(2)(E) automatically satisfies the sixth amendment requirements. *Boone v. Marshall*, 760 F.2d 117, 119 (6th Cir.1985); *United States v. McLernon*, 746 F.2d 1098, 1106 (6th Cir.1984); *United States v. Marks*, 585 F.2d 164, 170 n. 5 (6th Cir. 1978); *United States v. McManus*, 560 F.2d 747 (6th Cir.1977), *cert. denied*, 434 U.S. 1047, 98 S.Ct. 894, 541 L.Ed.2d 798 (1978); *Campbell v. United States*, 415 F.2d 356 (6th Cir.1969). *Accord United States v. Lurz*, 666 F.2d 69, 80–81 (4th Cir.1981), *cert. denied*, 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982); *United States v. Papia*, 560 F.2d 827, 836 & n. 3 (7th Cir.1977); *Ottomano v. United States*, 468 F.2d 269, 273 (1st Cir.1972), *cert. denied*, 409 U.S. 1128, 93 S.Ct. 948, 35 L.Ed.2d 260 (1973). However, none of these cases discuss the implications of the two-pronged test of *Roberts* on our analysis.

■ In *Fuson v. Jago*, 773 F.2d 55 (6th Cir.1985), another approach was used which applied *Roberts*. In *Fuson* a separate finding of unavailability was made and the panel held that the 801(d)(2)(E) provision represented a "well established" hearsay exception. *Fuson*, 773 F.2d at 59. Though the *Fuson* Court ultimately found that the statement in question did not fit within the exception, we think the bifurcated analysis is proper and more in accord with the *Roberts* requirements. As implied in *Fuson*, the reliability prong of the *Roberts* analysis is supplied by satisfaction of Rule 801(d)(2)(E), a well-established hearsay exception. Availability must be separately proved. *Accord United States v. Peacock*, 654 F.2d 339, 349–50 (5th Cir. 1981), *cert. denied*, 464 U.S. 965, 104 S.Ct. 404, 78 L.Ed.2d 344 (1983).

Because we find that Lonardo's statements were properly admitted under Rule

5. The Supreme Court denied certiorari in a case presenting this precise issue. *See Sanson v.*

*United States*, —— U.S. ——, 104 S.Ct. 3559, 82 L.Ed.2d 861 (1984).

801(d)(2)(E), reliability is proved. Lonardo, the declarant and Bourjaily's codefendant, was unavailable because he refused to testify. In *Mayes v. Sowders,* 621 F.2d 850, 855 (6th Cir.), *cert. denied,* 449 U.S. 922, 101 S.Ct. 324, 66 L.Ed.2d 151 (1980), we stated:

A witness is not available for full and effective cross-examination when he or she refuses to testify. *Douglas v. Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *Nelson v. O'Neil,* 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971). This is equally true whether the refusal to testify is predicated on privilege or is punishable as contempt, so long as the refusal to testify is not procured by the defendant. *Douglas v. Alabama, supra,* 380 U.S. at 420, 85 S.Ct. at 1077; *Motes v. United States,* 178 U.S. 458, 471, 20 S.Ct. 993, 998, 44 L.Ed. 1150 (1900); *United States v. Mayes,* 512 F.2d 637, 650–52 (6th Cir.), *cert. denied,* 422 U.S. 1008, 95 S.Ct. 2629, 45 L.Ed.2d 670 (1975).

621 F.2d at 856. *See Rice v. Marshall,* 709 F.2d 1100, 1102 (6th Cir.1983), *cert. denied,* 465 U.S. 1034, 104 S.Ct. 1304, 79 L.Ed.2d 703 (1984). Clearly, Lonardo's refusal to testify made him unavailable.

■ Bourjaily's final claim is that the evidence adduced at trial was insufficient to support a finding by the jury that conspiracy to distribute cocaine and possession of cocaine were proved beyond a reasonable doubt. The standard now generally applied in determining the sufficiency of the evidence at trial is "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *reh'g denied,* 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *United States v. Gallo,* 763 F.2d 1504, 1508 (6th Cir.1985). The essential elements of conspiracy are that the conspiracy was willfully formed and that the defendant willfully became a member of the con-

spiracy. An overt act need not be proven in a § 846 conspiracy. *United States v. Dempsey,* 733 F.2d 392 (6th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 389, 83 L.Ed.2d 323 (1984), rejecting the dicta in *United States v. Thompson,* 533 F.2d 1006, 1009 (6th Cir.), *cert. denied,* 429 U.S. 939, 97 S.Ct. 353, 50 L.Ed.2d 308 (1976). For conviction, Bourjaily must have been shown to have agreed to participate in what he knew to be a joint venture to achieve a common goal. *United States v. Warner,* 690 F.2d 545, 549 (6th Cir.1982); *United States v. Martino,* 664 F.2d 860, 876 (2d Cir.1981), *cert. denied,* 458 U.S. 1110, 102 S.Ct. 3493, 73 L.Ed.2d 1373 (1982). However, actual agreement need not be proved. Drug distribution conspiracies are often "chain" conspiracies such that agreement can be inferred from the interdependence of the enterprise. *Warner,* 690 F.2d at 549; *United States v. Sutherland,* 656 F.2d 1181, 1195–96 (5th Cir.1981), *cert. denied,* 455 U.S. 949, 102 S.Ct. 1451, 71 L.Ed.2d 663 (1982). One can assume that participants understand that they are participating in a joint enterprise because success is dependent on the success of those from whom they buy and to whom they sell. *Warner,* 690 F.2d at 549; *Martino,* 664 F.2d at 876. Circumstantial evidence is sufficient. *Thompson,* 533 F.2d at 1009.

■ Viewing the evidence before us in the light most favorable to the United States, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), we hold that there was sufficient evidence from which the rational jury member could have found beyond a reasonable doubt that Bourjaily was a willful member of a conspiracy to distribute cocaine. The evidence established that Bourjaily took the cocaine from Lonardo in the Hilton parking lot. The additional evidence of Lonardo's actions in lining up buyers, and Lonardo's conversations with Greathouse is supportive of the conspiracy finding. Lonardo called Greathouse so that his "friend" could discuss the deal with him. Greathouse spoke with this "friend" about the quality of the cocaine. Lonardo later said "his friend" would be in the Hilton parking lot. Even if the evidence of Bourjaily taking the cocaine from

Lonardo is only evidence of a sale, there is additional evidence from which knowledge of the conspiracy may be inferred. *United States v. Grunsfeld,* 558 F.2d 1231, 1235 (6th Cir.1977), *cert. denied,* 434 U.S. 872, 98 S.Ct. 219, 54 L.Ed.2d 152 (1978). *United States v. Mayes,* 512 F.2d 637, 647 (6th Cir.), *cert. denied,* 422 U.S. 1008, 95 S.Ct. 2629, 45 L.Ed.2d 670 (1975). Further, one kilogram of cocaine was involved. A large volume of narcotics creates an inference of a conspiracy. *Grunsfeld,* 558 F.2d at 1235; *United States v. Aiken,* 373 F.2d 294, 300 (2d Cir.), *cert. denied,* 389 U.S. 833, 88 S.Ct. 32, 19 L.Ed.2d 93 (1967).

Likewise, a rational trier of fact could find that possession, a necessary finding for a violation of 21 U.S.C. § 841(a)(1), was proved beyond a reasonable doubt. An FBI agent testified that he saw Lonardo give Bourjaily the cocaine and that Bourjaily accepted it. Immediately thereafter, Bourjaily was arrested and the cocaine was found in the passenger portion of his car. Bourjaily's contention that he did not know that the substance was cocaine is meritless in light of the money found in his car, Lonardo's statements, and the phone call Greathouse had with Lonardo's "friend."

We affirm.