UNITED STATES of America, Plaintiff–Appellee,

v.

Frank MARTIN, Defendant–Appellant.

No. 89–3685.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 13, 1990.

Decided Nov. 30, 1990.

---

Terry Lehmann (argued), Office of the U.S. Atty., Cincinnati, Ohio, Bradley D. Barbin, Office of the U.S. Atty., Columbus, Ohio, and Gregory G. Lockhart, Office of the U.S. Atty., Dayton, Ohio, for plaintiff-appellee.

John F. Jackson (argued), Columbus, Ohio, for defendant-appellant.

Before JONES and BOGGS, Circuit Judges, and GIBBONS, District Judge.*

GIBBONS, District Judge.

Appellant Frank Martin was convicted in the district court of conspiracy to possess cocaine with intent to distribute and conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 and possession of one kilogram of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18

---

* The Honorable Julia S. Gibbons, United States District Judge for the Western District of Tennessee, sitting by designation.

U.S.C. § 2. On appeal he challenges the sufficiency of the evidence to support his conviction and claims that he received ineffective assistance of counsel. He also claims that the district court erred in denying his motion for severance.

Martin and Sir Joseph Carroll [1] were arrested at the Columbus, Ohio, airport on October 13, 1988, by Airport Narcotics Squad Detectives of the Columbus Police Department, shortly after their arrival on a flight from Miami. Prior to the arrest police observed the two in the airport. Martin was following Carroll from a distance of approximately thirty feet, constantly watching Carroll's activities. At one point, Carroll stopped until Martin caught up with him; they looked at each other, and then Carroll continued toward the door with Martin again following thirty to forty-five feet behind him.

The police stopped Carroll, who gave his name as Pete Carroll. Carroll had no identification, luggage or money. Carroll stated that he was traveling alone and denied knowing Martin. One of the detectives, who had previously observed Carroll's rather stiff carriage, then noticed a bulge under Carroll's jacket. Ultimately, it was determined that Carroll was "body carrying" or carrying cocaine strapped tightly to his body with tape. Officers seized approximately one kilogram of cocaine from Carroll's person. Carroll then gave a statement in which he said that he had gone to Atlanta to purchase drugs and that Martin was not involved.

Meanwhile, Officers Michael D. Karn and Thomasina Jacobs had stopped Martin. Martin consented to a search of his bags, which produced nothing. Martin gave officers the false name of Michael Carroll, but furnished his correct address and social security number. Martin testified at trial that he lied about his identity because he was afraid that his outstanding traffic warrants would be discovered and he would have to go to jail. Other evidence indicated that Martin did have traffic warrants and had failed to appear on several occasions.

At the airport, Officers Karn and Jacobs spoke to Martin about his potential involvement with Carroll. At one point one of the officers said that, if Martin had been involved with Carroll, he was going to jail. Upon hearing this, Martin shoved Officer Karn and ran out the door, dropping his black jacket as he ran. Martin was eventually apprehended in a rental car lot near the airport. Two airline tickets issued in the names of Mike Carroll and John Carroll were found in the jacket.

Later officers questioned Martin further. He stated that he had flown from Miami and that he had stayed at the Ramada Inn in Miami. He indicated that he had met Carroll in Miami and that Carroll had furnished money for the plane tickets to Columbus. Although Martin stated he planned to take a cab home, the amount of money on his person was not enough for the cab fare.

At trial, Martin, who worked as a janitor in October 1988, testified that he had gone to Miami on October 12, 1988, after having an argument with his wife. He took $615.00 with him for the trip. Martin's wife also testified that she and Martin had argued. Martin purchased a one-way ticket to Miami.

According to Martin, he went to the Club Strawberry on the night of October 12. There he happened to meet Carroll, whom he had known since high school. Martin decided to return to Columbus with Carroll the next day. Carroll called the airport to reserve the plane tickets. Martin testified that Carroll gave false names for the plane tickets as a joke. Martin met Carroll the next day at the airport. Contrary to his earlier statement, Martin testified at trial that he gave cash to Carroll to pay for the plane ticket.

The flight had a layover in Atlanta. Martin and Carroll sat together on the flight from Miami to Atlanta. In Atlanta, Martin and Carroll were asked to deplane and Martin's bag was searched. The search produced nothing. From Atlanta to Columbus, they sat in separate seats. Martin testified that they sat separately

1. "Sir" is apparently a given name, not a title.

because the flight from Atlanta to Columbus was not as crowded, and he wanted to stretch out to rest.

■ Martin first argues that the evidence is insufficient to support his conviction. The test for determining whether a conviction is supported by sufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Scartz,* 838 F.2d 876, 878 (6th Cir.1988), *cert. denied,* 488 U.S. 923, 109 S.Ct. 303, 102 L.Ed.2d 322 (1988). The proof offered to support Martin's conviction meets this test.

■ Martin essentially contends that there is insufficient proof that he and Carroll agreed to violate the controlled substances laws and that Martin willfully participated in any conspiracy. The evidence shows that Martin and Carroll, who previously knew each other, met in Miami and traveled to Columbus together. At the Columbus airport, Martin followed Carroll from a distance and in such a manner that a rational jury could conclude he was acting as a lookout. Martin carried plane tickets for himself and Carroll. The tickets were purchased together. Plainly there was evidence from which the jury could find the element of agreement beyond a reasonable doubt.

■ The evidence is also sufficient with respect to Martin's intent to participate in the conspiracy. Carroll, with whom Martin was working, had a kilogram of cocaine on his person. The amount of cocaine permits an inference that the cocaine was intended for distribution, not personal use. *United States v. Franklin,* 728 F.2d 994, 998 (8th Cir.1984). A rational jury could infer Martin's knowledge of the cocaine from his conduct in the airport, his use of a false name on the ticket and at the airport, and his flight when confronted with officers' knowledge of Carroll's guilt. Further, a rational jury could have found the testimony of both Martin and Carroll incredible.

Although Martin offered reasons for using false names on the tickets and for his flight from officers at the airport, he gave inconsistent testimony about the purchase of the tickets and an implausible explanation about the reasons for his trip to Miami. Similarly, the jury was free to disbelieve Carroll's testimony that Martin was not involved in transporting cocaine. A rational jury could have found the requisite intent beyond a reasonable doubt.

■ Martin also challenges the sufficiency of the evidence to support the conviction of possession of cocaine with intent to distribute. Although Martin was not in actual possession of the cocaine, the evidence supports a finding that he aided and abetted the criminal venture. "To be found guilty of the crime of aiding and abetting a criminal venture, a defendant must associate himself with the venture in a manner whereby he participates in it as something that he wishes to bring about and seeks by his acts to make succeed." *United States v. Quinn,* 901 F.2d 522, 530 n. 6 (6th Cir. 1990) (quoting *United States v. Evans,* 883 F.2d 496, 501 (6th Cir.1989)). Based on Martin's conduct at the airport, a reasonable juror could conclude beyond a reasonable doubt that he acted as a lookout for Carroll. One who acts as a lookout for another in possession of a kilogram of cocaine is one who associates himself with the criminal venture, participates in it, and seeks by his acts to make it succeed. Therefore, the evidence was sufficient to support a conviction of possession with intent to distribute.

■ The jury could also have properly convicted Martin of possession of cocaine with intent to distribute under the doctrine of *Pinkerton v. United States,* 328 U.S. 640, 646–47, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946). The *Pinkerton* doctrine permits conviction of a conspirator for the substantive offenses of other conspirators committed during and in furtherance of the conspiracy. Here, once a rational jury found Martin guilty of conspiracy, it could also find him guilty of the substantive of-

fense of possession of cocaine with intent to distribute.

On appeal, Martin also argues that the district court abused its discretion in denying his motion for severance. We reject this assertion. The facts relating to Martin and Carroll, and to the conspiracy and substantive offense charges, were inextricably linked. Martin has not established that his joinder with Carroll created substantial prejudice *so as to require severance. See United States v. Gallo,* 763 F.2d 1504, 1526 (6th Cir.1985), *cert. denied,* 474 U.S. 1068, 106 S.Ct. 826, 88 L.Ed.2d 798 (1986).

Finally, Martin appeals his conviction on the ground that he was denied effective assistance of counsel. The court declines to consider this contention, because it is being raised for the first time on appeal. *See United States v. Swidan,* 888 F.2d 1076, 1081 (6th Cir.1989). There has been no opportunity to develop and include in the record evidence bearing on the merits of the allegations. *Id.; United States v. Hill,* 688 F.2d 18, 21 (6th Cir.), *cert. denied,* 459 U.S. 1074, 103 S.Ct. 498, 74 L.Ed.2d 638 (1982). The court's refusal to address the ineffective assistance of counsel claim is without prejudice to petitioner's right to raise the claim in a proper post-conviction proceeding under 28 U.S.C. § 2255.

Appellant Frank Martin's conviction is affirmed.

NATHANIEL R. JONES, Circuit Judge, dissenting.

I would reverse both Martin's conspiracy conviction and his conviction for possession with intent to distribute. Therefore, I respectfully dissent.

## I.

After viewing the evidence in the light most favorable to the prosecution, and fully aware that a defendant challenging the sufficiency of the evidence carries a heavy burden, however, I am strongly of the view that a rational trier of fact could not have found the essential elements of a conspir-

acy to possess and distribute cocaine beyond a reasonable doubt. "[T]he essential element of conspiracy is that 'the members of the conspiracy in some way or manner, or through some contrivance, came to a mutual understanding to try to accomplish a common and unlawful plan.'" *United States v. Pearce,* 912 F.2d 159, 161 (6th Cir.1990) (citation omitted). "With respect to the proof of conspiracies involving drugs, to obtain a conviction under [21 U.S.C.] section 846, the government must prove the existence of an agreement [by two or more persons] to violate the drug laws and that each conspirator knew of, intended to join and participated in the conspiracy." *Id.* (citing *United States v. Stanley,* 765 F.2d 1224, 1237 (5th Cir. 1985)). The government has failed to present sufficient evidence from which a rational jury could have found that Martin and Carroll had entered an agreement to violate the drug laws. The record does not contain evidence sufficient to show that Martin and Carroll had entered any type of agreement, tacit or otherwise, to possess and distribute cocaine. Nor is their evidence in the record showing that Martin "knew of, intended to join and participated in [a] conspiracy."

I fully realize that "circumstantial evidence alone is sufficient to sustain a conviction." *United States v. Ellzey,* 874 F.2d 324, 328 (6th Cir.1989) (citation omitted). Further, I am aware that inferential proof and circumstantial evidence are "the norm in drug conspiracy prosecutions." *United States v. Green,* 548 F.2d 1261, 1266 (6th Cir.1977) (citation omitted). Unlike cases such as *Ellzey,* however, the record in the present case does not contain sufficient evidence from which a rational jury could have found the existence of a tacit or mutual understanding between Martin and Carroll to engage in a common plan to possess and distribute cocaine. *See Ellzey,* 874 F.2d at 328 (evidence included numerous contacts between co-conspirators over three-year period); *United States v. Bourjaily,* 781 F.2d 539, 544 (6th Cir.1986) *aff'd,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987) (evidence that a defendant transport-

ed cocaine and helped arrange sales sufficient to support conspiracy charge). The present case is more analogous to the situation presented in *United States v. Pearce*, 912 F.2d 159 (6th Cir.1990).

In *Pearce*, defendant Thorpe was found inside a crack house during a police raid near an open floor drain containing two doses of crack. Thorpe was armed and other weapons were found in the house. The police also found defendant Pearce sitting on a couch in the living room. Next to Pearce on the couch was a bag containing the registered bills which an informant had earlier used to purchase crack and a bag containing crack cocaine. This court reversed the conspiracy conviction because there was no evidence, other than the fact that Thorpe and Pearce were in the house at the same time, to support a finding of an agreement between the two. *Pearce*, 912 F.2d at 160–62. I am frank to say that the evidence in the present case is somewhat stronger than the evidence present in *Pearce*. Like the circumstantial evidence in *Pearce*, however, the circumstantial evidence against Martin in this case is also insufficient.

Martin was traveling with Carroll. Martin and Carroll were traveling under false names. Martin fled the scene when confronted with officers' knowledge of Carroll's guilt. These facts are insufficient for a rational jury to infer an agreement to possess and distribute cocaine. Even if Martin's testimony regarding his association with Carroll is discredited as the majority suggests, Martin's presence with Carroll at the time of Carroll's arrest is not sufficient to support a conspiracy conviction. *See, e.g., Pearce*, 912 F.2d at 162 (defendants' presence at house during raid without more held insufficient); *United States v. Nusraty*, 867 F.2d 759, 764 (2nd Cir.1989) (mere presence at scene of an aborted drug transfer is insufficient to prove a conspiratorial agreement). Also, it is true that the use of an alias when purchasing plane tickets may be probative of an intent to avoid detection in airport drug trafficking. *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 1586, 104 L.Ed.2d 1 (1989). Carroll, not Martin, however, called the airport to reserve the tickets.

Although it appears that Martin was aware of Carroll's use of false names in obtaining their tickets, there is no evidence indicating that Martin knew that Carroll was using false names in an attempt to evade drug detection. *See id.* (there are certain instances where traveling under an alias would not reflect ongoing criminal activity); *cf. United States v. Williams*, 503 F.2d 50, 54 (6th Cir.1974) (" 'Mere knowledge, approval of or acquiescence in the object or the purpose of the conspiracy, without an intention and agreement to cooperate in the crime' is not sufficient to make one a conspirator.") (citation omitted). Finally, Martin's association with Carroll coupled with Martin's flight at the airport could not constitute the evidence necessary to support a conspiracy to possess and distribute cocaine. *See United States v. Pintado*, 715 F.2d 1501, 1504 (11th Cir.1983) ("neither mere presence nor presence at the scene in conjunction with fleeing or hiding from officers of the law alone will support a conspiracy conviction") (citation omitted).

To be sure, Martin's association with Carroll presented suspicious circumstances. Further, Martin's conduct after he and Carroll deplaned may have been suspicious also. "Suspicious circumstances, however, are not enough to sustain a conviction for conspiracy." *Nusraty*, 867 F.2d at 763. "In most instances, this court requires firm evidence of at least tacit coordination among conspirators in affirming conspiracy convictions." *Pearce*, 912 F.2d at 162 (citations omitted). *See also United States v. Hyson*, 721 F.2d 856, 862 (1st Cir.1983) (no conspiracy although defendant knew drug dealers, occupied apartment of one drug dealer and knew drugs were in apartment he occupied); *Williams*, 503 F.2d at 54 (no agreement where evidence against defendant was that he was in motel room emptying plastic bags into toilet). Firm evidence of at least a tacit coordination between Martin and Carroll is absent from the present case. The government's case against Martin was based upon the summation of inference upon inference upon infer-

ence. I cannot say that all of these inferences are legitimate. *United States v. Adamo,* 742 F.2d 927, 932 (6th Cir.1984), *cert. denied sub nom. Freeman v. United States,* 469 U.S. 1193, 105 S.Ct. 971, 83 L.Ed.2d 975 (1985) (draw all legitimate inferences in favor of prosecution). Martin was not convicted of conspiracy because he had a mutual understanding with Carroll to possess and distribute cocaine nor because he knew of, intended to join, and participated in a conspiracy. Martin was convicted of conspiracy because he was associated with Carroll.

## II.

Likewise, I do not believe that a rational trier of fact could have found that Martin possessed cocaine with intent to distribute beyond a reasonable doubt. In order to be found in violation of 21 U.S.C. § 841(a)(1), one must *possess* cocaine with intent to distribute. *Nusraty,* 867 F.2d at 766 (emphasis added). The majority acknowledges that Martin did not have actual possession of the cocaine. I also do not think that Martin had constructive possession of the cocaine. *See United States v. Blasco,* 702 F.2d 1315, 1330 (11th Cir.), *cert. denied sub nom. Galvan v. United States,* 464 U.S. 914, 104 S.Ct. 275, 78 L.Ed.2d 256 (1983) (" 'The hallmark of constructive possession is some measure of dominion and control over the contraband.' ") (citation omitted); *Williams,* 503 F.2d at 52 (" 'Constructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others.' ") (citation omitted); *United States v. Maspero,* 496 F.2d 1354, 1359 (5th Cir. 1974) (mere presence in area of contraband or awareness of its location is insufficient to establish possession). Notwithstanding the lack of possession, the majority holds that the evidence supports a finding that Martin aided and abetted a criminal venture, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The evidence does not support such a finding, nor does it demonstrate that Martin associated himself with Carroll's venture "in a manner whereby he participate[d] in it as something that he wishe[d] to bring about and [sought] by his acts to make succeed." *United States v. Quinn,* 901 F.2d 522, 530 n. 6 (6th Cir.1990) (citation omitted).

The majority also holds that the jury could have properly convicted Martin of possession of cocaine with intent to distribute under the doctrine of *Pinkerton v. United States,* 328 U.S. 640, 646–47, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946). Because I do not think that a rational trier of fact could have found Martin guilty of conspiracy to possess and distribute cocaine, I do not think that the *Pinkerton* doctrine was appropriate in this case.

## III.

Our nation's policy of ridding this country of the evils of illegal drugs is necessary and commendable. Illegal drugs have had and continue to have a devastating effect upon the lives of countless persons in this country, including, unfortunately, our youths. This policy, although admirable, does not alter the well-established principle that in a criminal prosecution, the government must prove every element of the charged crime beyond a reasonable doubt. *United States v. Carr,* 550 F.2d 1058, 1059 (6th Cir.1977) (per curiam).

So to say that this is not an easy case would be a gross understatement. However, after careful consideration, I am simply not persuaded that the government carried its burden in this case. Affirming Martin's convictions relieves the government of its burden in a way not permitted by the law. Furthermore, I have a growing fear that casting a conspiracy net will become a catch-all method charging anyone caught in the vicinity of illegal drugs. Such a catch-all could then be used to convict purely innocent persons, albeit unintentionally. The government's burden of proof is not lessened when cocaine is involved. Therefore, I respectfully dissent.