**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 06-4244

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

KELVIN LORENZO SPEARMAN,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. Richard L. Williams, Senior District Judge. (3:05-cr-00060-RLW)

Argued: September 26, 2007      Decided: November 15, 2007

Before WILLIAMS, Chief Judge, SHEDD, Circuit Judge, and Joseph F. ANDERSON, Jr., United States District Judge for the District of South Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** John Bertram Mann, CANFIELD, BAER, HELLER & JOHNSTON, L.L.P., Richmond, Virginia, for Appellant. Charles Everett James, Jr., Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellee. **ON BRIEF:** Chuck Rosenberg, United States Attorney, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant Kelvin Spearman ("defendant") was charged in a four-count superseding indictment for conspiracy to possess with intent to distribute cocaine base ("crack cocaine"), in violation of 21 U.S.C. § 846 ("Count One"), possession with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii) and 860 ("Count Two"), as well as two other counts not at issue on appeal. Following the denial of his motion to suppress evidence of crack cocaine discovered during the course of a search of defendant's vehicle, a jury convicted defendant on all four counts. Defendant timely appeals his convictions on Counts One and Two, arguing that the district court erred when it denied the suppression motion and that the evidence did not support his conviction on the conspiracy count. For the reasons that follow, we affirm.

I.

Defendant first raises a Fourth Amendment challenge to the traffic stop[1] that preceded the seizure of crack cocaine from underneath the driver's seat of the vehicle that he was driving. Defendant contends that the police officer who initiated the

_____

[1]This opinion uses the term "traffic stop" because the parties' briefs refer to the subject event as a traffic stop. However, the parties conceded at oral argument that the police did not effect a traffic stop, but that the defendant stopped his car and the police pulled in behind him after he stopped, as described more fully infra at page 4.

2

traffic stop lacked probable cause or reasonable suspicion to stop the vehicle and, therefore, any evidence derived from that stop should have been suppressed.

A.

At a hearing on the suppression motion, Richmond City Police Detective Rahmel Logan testified that, with the use of a confidential source, he and other officers conducted an undercover buy operation on July 15, 2004 in the West Moore Street area of Richmond, Virginia. Detective Logan testified that he observed defendant's maroon Cadillac slowly cruise through the block and stop in the middle of the street. Detective Logan saw an individual approach the vehicle and engage the driver in conversation through the car window.

The confidential source milled around the area and returned to Detective Logan's car without making a drug purchase. The confidential source informed Detective Logan that he attempted to purchase drugs from an individual who did not have any to sell, but who told him that he could get some from the maroon Cadillac. The confidential source stated that he did not feel comfortable going to the maroon Cadillac to buy drugs, so he left the area and was picked up by Detective Logan at the other end of the block.

Detective Logan testified that he put the information from the confidential source over the police radio. Richmond City Police Detective Chris Salyer testified that he and Detective Michael

3

McCray were in their vehicle when they received the radio transmission from Detective Logan about drugs being available from the maroon Cadillac. Upon receiving the radio transmission, Detective Salyer's unmarked vehicle and the maroon Cadillac passed one another going in opposite directions. While passing defendant's maroon Cadillac, Detective Salyer observed that the driver was a black male whom Detective Salyer believed was another individual known to be an armed drug dealer with a suspended license.

Approximately half a block separated the vehicles when Detective Salyer turned to follow defendant. After traveling through a stop sign, defendant pulled to the shoulder of the curb and parked within a row of parked vehicles. Detective Salyer also drove through the stop sign, and, unable to observe the tag of defendant's vehicle, pulled to the shoulder and parked immediately behind defendant. Detective Salyer did not activate his blue lights. Both Detective Salyer and Detective McCray then observed defendant looking in his rear-view mirror toward the detective's unmarked vehicle. As Detective Salyer exited the vehicle, he pulled his badge from under his shirt and, at that point, observed defendant's left shoulder make a downward motion, as if defendant were reaching under the seat with his left hand. As Detective Salyer approached the driver's side door, defendant still was reaching under his seat and looking in his rear-view mirror, which

4

showed Detective McCray approaching from the defendant's passenger side.

Detective Salyer tapped on defendant's driver-side window and identified himself as a Richmond Police officer. Defendant then pulled his hand out from under the seat. Detective Salyer asked what defendant was doing under the seat, and defendant stated that he dropped his cell phone and made a motion like he was going to reach back under the seat. Detective Salyer, however, observed that a cell phone was already in defendant's lap and testified that he believed defendant might be reaching for a weapon. Detective Salyer asked defendant to step out of the vehicle and conducted a pat-down search that did not reveal any contraband. Detective Salyer guided defendant to the rear of the vehicle where defendant produced identification. Detective Salyer returned to the vehicle and, during a protective sweep under the driver's seat, found a plastic bag of individually-bagged rocks totaling 5.6 grams of crack cocaine. Meanwhile, Detective McCray ran defendant's information, which revealed an outstanding arrest warrant. Defendant was arrested for conspiracy to distribute, as well as for a subsequently-discovered outstanding arrest warrant.

Defendant subsequently moved to suppress the admission of the crack cocaine found under the driver's seat. The district court denied defendant's motion. The court found that, based on the information transmitted over the radio by Detective Logan,

5

Detective Salyer had information that the maroon Cadillac was a vehicle in which drug transactions could take place. Therefore, given the totality of the circumstances, a reasonable officer had probable cause to stop and search the vehicle.

B.

"The Supreme Court has recognized three distinct types of police-citizen interactions: (1) arrest, which must be supported by probable cause; (2) brief investigatory stops, which must be supported by reasonable articulable suspicion; and (3) brief encounters between police and citizens, which require no objective justification." United States v. Weaver, 282 F.3d 302, 309 (4th Cir. 2002) (citations omitted). In reviewing a denial of a motion to suppress, "we review the factual findings of the district court for clear error and its legal conclusions de novo." See United States v. Brown, 401 F.3d 588, 592 (4th Cir. 2005) (internal quotation marks omitted).

The Fourth Amendment requires that a brief, investigatory stop of an individual be supported by reasonable, articulable suspicion that criminal activity is afoot. Terry v. Ohio, 392 U.S. 1, 30, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The reasonable suspicion standard "is a less demanding standard than probable cause and requires a showing considerably less than a preponderance of the evidence." Illinois v. Wardlow, 528 U.S. 119, 123, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000).

In deciding whether an officer had the requisite reasonable suspicion to conduct an investigatory traffic stop, courts apply an objective test rather than examining the subjective beliefs of the investigating officer. Id. The "reasonable suspicion standard is a commonsensical proposition. Courts are not remiss in crediting the practical experience of officers who observe on a daily basis what transpires on the street." United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993). The Supreme Court has recognized that individual factors consistent with innocent travel can, when taken together, give rise to reasonable suspicion. United States v. Sokolow, 490 U.S. 1, 9, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989).

Here, Detective Salyer initially approached defendant in response to a radio transmission that drugs were available from the maroon Cadillac defendant was driving. Even if Detective Salyer did not have reasonable suspicion for a Terry stop at that time, cf. Florida v. J.L., 529 U.S. 266, 271-72, 120 S. Ct. 1375, 146 L. Ed. 2d 254 (2000), the circumstances evolved to present a more suspicious and dangerous climate when the detectives saw defendant observing them approach his vehicle and ducking his left shoulder, apparently reaching under his driver's seat. Detective Salyer had received a report over the police radio that drugs were available from defendant's car, and Detective Salyer thought, though mistakenly, that defendant was another individual whose license had been suspended, who was involved in drug trafficking, and who was

7

known to carry weapons. Defendant's fixation in his rear-view mirror on the detectives while reaching under his car seat created heightened tension in an already-known high-crime area. When defendant engaged in activity which Detective Salyer reasonably perceived to be potentially dangerous in nature—-seeing the detectives approach, unarmed, while reaching for a weapon under the seat—-the totality of the facts known to Detective Salyer combined to create a reasonable, articulable suspicion that he and Detective McCray were in danger and that defendant was armed and dangerous.

As we have previously stated, "the very point of <u>Terry</u> was to permit officers to take preventive action and conduct investigative stops <u>before</u> crimes are committed, based on what they view as suspicious-albeit even legal-activity." <u>United States v. Perkins</u>, 363 F.3d 317, 326 (4th Cir. 2004)(emphasis in original). "We cannot afford to read the Fourth Amendment to require officers to wait until criminal activity occurs, and perhaps until innocent bystanders are physically harmed, before taking reasonable, preventive measures." <u>Id</u>. at 328; <u>see Adams v. Williams</u>, 407 U.S. 143, 145, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972) ("The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, <u>Terry</u> recognizes that it may be the essence of good police work to adopt an intermediate response.").

8

Given the totality of the circumstances, we agree with the district court that Detective Salyer was justified in seizing defendant, and conducting a pat-down search and protective sweep for weapons. We conclude that an officer in Detective Salyer's position would have had an objectively reasonable suspicion that the maroon Cadillac that defendant was driving was connected with illicit drug activities. The radio transmission had occurred only minutes earlier. Independently, Detective Salyer thought the driver was a known drug dealer who carried weapons and whose license had been suspended. Finally, defendant made furtive movements under the driver's seat when he saw the detectives approaching his vehicle and provided a unlikely excuse for his movements. We conclude that these factors, taken together, give rise to reasonable suspicion sufficient to justify the stop and search under Terry.

Further, we find that the search under the defendant's driver's seat for weapons was permissible as an extension of the legitimate Terry stop. See Michigan v. Long, 463 U.S. 1032 (1983)(search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officers in believing that the suspect is dangerous and the suspect

9

may gain immediate control of weapons). We find the district court did not err in admitting evidence of the crack cocaine discovered during Detective Salyer's search for weapons under the seat. Id. at 1050 (if while conducting a legitimate Terry search of the interior of the automobile, the officer should discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances).

For the foregoing reasons, we affirm defendant's conviction on Count Two.

## II.

Defendant next challenges the sufficiency of the evidence underlying his conviction on the conspiracy charged in Count One. The evidence at trial as to the conspiracy count included testimony by a confidential informant named Chris Cox ("Cox") who testified that he purchased crack cocaine from defendant 60 to 70 times in varying amounts, including amounts as large as one quarter ounce or approximately seven (7) grams. Cox testified that when he bought an amount that large, he and a group of people would pool their money to purchase the crack. Cox also attempted two recorded controlled crack cocaine buys of $200 each for law enforcement, resulting in actual purchases of $80 and $150 worth. The

government expert testified that 5.6 grams[2] of crack cocaine was not a typical personal use amount, and that based on his training and experience, such an amount of crack would be packaged for resale. Cox testified that he met defendant through defendant's uncle, Sonny, who served as Cox's former supplier. Cox testified that the three of them met together at a Fourth of July block party, where Sonny told Cox that defendant would "take care of him if he needed anything" while Sonny was in Las Vegas for the week. (J.A. 141).

A defendant challenging the sufficiency of the evidence to support his conviction "bears a heavy burden." United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997). Where, as here, the motion was based on a claim of insufficient evidence, "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). This court "ha[s] defined 'substantial evidence' as 'evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" Alerre, 430 F.3d at 693 (quoting United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996) (en banc)). In evaluating the

---

[2]The amount of crack found under defendant's driver's seat was 5.6 grams. The proof of the conspiracy did not involve the crack seized from the car, but the expert testimony that 5.6 grams of crack is not for personal use likewise supports the inference of distribution for the 7 gram sale.

11

presence of substantial evidence, we "consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). This court "may not weigh the evidence or review the credibility of the witnesses." United States v. Wilson, 118 F.3d 228, 234 (4th Cir. 1997).

A.

To prove conspiracy to possess cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 846, the government "must establish that: (1) an agreement to possess cocaine with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of this conspiracy." Burgos, 94 F.3d at 857.

Defendant contends that the evidence showed only that he and Cox shared a buyer-seller relationship, not "an agreement to possess cocaine with intent to distribute." Id. Viewing the evidence in the light most favorable to the government, we find substantial evidence to support a finding that defendant's involvement went beyond that of a buyer-seller. Cox specifically testified as to his and defendant's involvement with defendant's uncle Sonny, including the three of them meeting to orchestrate the details of who would be available when to distribute cocaine to

12

Cox.[3]  See United States v. Brown, 332 F.3d 363, 373 (6th Cir. 2003) ("[E]vidence of repeat purchases provides evidence of more than a mere buyer-seller relationship."); United States v. Bourjaily, 781 F.2d 539, 545 (6th Cir. 1986) ("A large volume of narcotics creates an inference of a conspiracy.").

The court finds a conspiracy was established because (a) Cox's purchases were of an amount too great to be for only personal use, even if the drugs were to be shared with friends (whose money was pooled to make the purchase), thereby sufficiently establishing intent to distribute; and (b) testimony that Cox purchased from both defendant and his uncle, Sonny, and testimony that all three of them met together at a Fourth of July block party and discussed purchasing drugs from defendant establishes the existence of an agreement.

For the foregoing reasons, the court finds no error in the district court's denial of defendant's suppression motion and finds that the evidence supports defendant's conviction on the conspiracy count.  Accordingly, the judgment is affirmed.

AFFIRMED

---

[3]Defendant also attacks on appeal the credibility of Cox. However, "[t]he jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented." United States v. Murphy, 35 F.3d 143, 148 (4th Cir. 1994).  We find no reason to disturb the jury's credibility determinations here.