983 F.2d 1069
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Arthur Lee HARRIS; Kenneth Kelly Harris; and, Arthur
Lavaughn Harris, Defendants-Appellants.
 Nos. 91-2421 to 91-2423.
 United States Court of Appeals, Sixth Circuit.
 Dec. 31, 1992.
 
 Before SILER and BATCHELDER, Circuit Judges, and KRUPANSKY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 On August 7, 1991, a jury convicted Defendants-Appellants Arthur Lee Harris ("Harris"), Kenneth Kelly Harris ("Kenneth"), and Arthur Lavaughn Harris ("Arthur") on various federal drug and weapon charges. Specifically, per the enumeration in the redacted six-count superseding indictment,[1] these three Defendants were convicted for conspiracy to distribute heroin and cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846 (Count One). Additionally, Harris was convicted for possession of heroin with intent to distribute, and aiding and abetting thereof, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Four); for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) (Count Five); and for use of a firearm during a drug offense, in violation of 18 U.S.C. § 924(c). Kenneth was also convicted for possession of cocaine with intent to distribute, and aiding and abetting thereof, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count Two); and for use of a firearm during a drug offense, in violation of 18 U.S.C. § 924(c) (Count Three). For reasons stated herein, the district court will be AFFIRMED.
 
 
 2
 Each charge listed in the indictment arose from activities surrounding a narcotics ring operating in and around Flint and Detroit between January 1988 and October 1990. During that period, significant evidence accumulated implicating Defendants as drug organization participants. In its case against Defendants, the Government offered over 500 exhibits, many resulting from numerous searches, and 36 witnesses, including the testimony of five coconspirators testifying pursuant to plea agreements.[2]
 
 
 3
 The district court sentenced Harris to concurrent mandatory sentences of twenty years on Counts One and Four, a concurrent sentence of ten years on Count Five, and a consecutive mandatory term of five years on Count Six. Kenneth received concurrent terms of twenty years on Counts One and Two and a mandatory consecutive five year term on Count Three. The court sentenced Arthur to 120 months imprisonment.
 
 I. Arthur Lee Harris
 A. Sufficiency of the Evidence
 
 4
 First, Harris asserts that the evidence was insufficient to support a conviction on any of the charges he faced. Review for sufficiency of the evidence "is limited to determining whether the evidence, viewed in a light most favorable to the government, is sufficient for the reasonable trier of fact to find that the evidence established guilt beyond a reasonable doubt." United States v. Townsend, 796 F.2d 158, 161 (6th Cir.1986). This standard applies not only to Harris's claims, but also to the sufficiency attacks by the other Defendants.
 
 
 5
 Conviction under Count One required proof of "an agreement to violate the drug laws and that each conspirator knew of, intended to join, and participated in the conspiracy." United States v. Sanchez, 928 F.2d 1450, 1457 (6th Cir.1991). Harris asserts that the Government did not demonstrate the requisite elements, arguing: 1) that no witness testified to a tacit or express agreement; 2) that the testifying coconspirators all were addicts who only had used, not conspired to distribute, drugs with Harris; and 3) that even if a conspiracy existed between some of the coconspirators, Harris was not shown to be a participant.
 
 
 6
 Harris also argues that the Government did not adequately support the offenses in Counts Four (possession of heroin with intent to distribute), Five (felon in possession of a firearm), or Six (firearm use during a drug offense). Each of the charges centers on an October 25, 1990, arrest of Harris. At the site of that arrest, authorities found a .38 caliber pistol and a plate containing heroin residue. Harris argues that he never possessed either, noting, among other things: 1) that his fingerprints did not appear on the plate; 2) that Brenda Cousins, a testifying coconspirator, did not connect Harris with the gun; 3) that the weapon forming the basis for the firearm charges does not comport with witness descriptions of a gun at the scene; and 4) that he recanted his admission of ownership of the suspect weapon soon after making it.
 
 
 7
 Despite Harris's assertions, sufficient evidence supports conviction on all of the charges against him. As for the conspiracy charge, direct testimony showed Harris to be the owner or lessor of many raided locations of drug activity. Further, evidence portrayed Harris as having directed drug activities engaged in by other coconspirators, sold drugs to operational "middlemen," and purchased drugs in forms indicative of distribution. Though the evidence may not have shown a formal agreement, there is ample circumstantial proof that Harris participated in the conspiracy.
 
 
 8
 The convictions on Counts Four, Five, and Six also were supported by sufficient evidence. Harris was linked to the gun by Deborah Young, a testifying coconspirator, who had seen him with a gun on numerous occasions and had seen John Harris give the suspect gun to Harris. She also described seeing Harris with the .38 handgun prior to the search where he was arrested. Even Harris, on the day following his arrest, effectively admitted ownership of the weapon. Though the witnesses did not exactly describe the gun in evidence, such inconsistency would not prevent a reasonable juror from concluding either that the gun described was the same firearm as the gun seized, despite the incongruity, or that Harris possessed more than one firearm.
 
 
 9
 The evidence also tied Harris sufficiently to the heroin seized on October 25, 1991. Not only was he present, but his jacket, bearing identification, was in the room with the plate containing heroin residue. Given the other evidence linking Harris to drug activity, including heroin distribution, a reasonable juror could have found him guilty on Count Four.
 
 B. Home Detention
 
 10
 Harris also complains that the district court erred in failing to consider whether it could have imposed on him a sentence of home detention rather than incarcerating him in prison. However, as the Government notes, the offenses for which Harris was convicted carried statutory minimum sentences of imprisonment. The Guidelines provide that a court may substitute home detention for imprisonment, only as a condition of probation or supervised release. See U.S.S.G. § 5F1.2. This makes it clear that home detention is not equivalent to imprisonment for the purposes of initial incarceration. Because imposing home detention would represent a downward departure, and because departure below a statutory minimum may occur only under the limited authority of 18 U.S.C. § 3553(e) (upon motion by the Government), which here is inapplicable, the district court correctly held that it had no authority to consider home detention for Harris.
 
 C. Subject Matter Jurisdiction
 
 11
 Harris argues finally that the district court lacked subject matter jurisdiction to try him for crimes that, because they occurred wholly intrastate, should be cognizable only by the state of Michigan. Such a construction, which ignores the virtually illimitable federal regulatory power emanating from the Commerce Clause, is rejected.
 
 II. Arthur Lavaughn Harris
 A. Sufficiency of the Evidence
 
 12
 Seizing on the aphorism that presence at the location of a conspiracy does not equal participation in that conspiracy, Arthur claims that the evidence showed him merely to have been a "barely tolerated 'hanger on' " in the suspected environment. In support of this "mere association" theory, Arthur cites testimony portraying him as an outsider: he did not possess a gun, was not present when any raids occurred, and was not implicated by any physical evidence gained through the raids. Further, Arthur stresses the absence of evidence that he sold drugs to anyone. Arthur dismisses as incredible the damaging testimony of coconspirator Deborah Young, who described Arthur as having run errands, processed heroin, and packaged heroin in furtherance of the conspiracy.
 
 
 13
 Young's testimony clearly provides a reasonable basis for the jury's decision to convict Arthur on Count One. She directly recited numerous instances of behavior by Arthur indicating knowing, active participation in the conspiracy. Coupling this with evidence showing Arthur to have frequented the drug scenes and sold drugs further supports the rationality of the conspiracy verdict.
 
 B. Motion for Mistrial
 
 14
 Arthur also complains that the district court erred in denying his motion for a mistrial premised on the court's admission of certain evidence seized during an arrest at which Arthur was present. On September 9, 1989, police stopped a car, in which Arthur was a passenger, operated by Frederick Vincent. From this car, police removed a police scanner, binoculars, and drug paraphernalia--all apparently belonging to Frederick Vincent. Though Vincent was not an indicted coconspirator, some evidence suggested a connection between Vincent and the conspiracy.
 
 
 15
 The district court expressed reservations about the admissibility of the evidence, questioning its relevancy based partly on the lack of a positive identity between Vincent the driver and a Frederick Vincent mentioned in previous suspicious organizational activities. Despite its misgivings, the court denied, and never reconsidered, Arthur's motion to suppress. Ultimately, despite the Government's willingness to adduce proof establishing Vincent's identity and status as a coconspirator, which would have assured the relevancy of the evidence, the court simply reiterated its denial of Arthur's suppression motion. To this, Arthur inexplicably responded by withdrawing his prior motion for reconsideration.
 
 
 16
 The district court's suppression ruling was correct. First, admission of the evidence was not an abuse of discretion. Though the district court had justifiable doubts about Vincent's identity and coconspiratorial role, the testimony presented would have supported a finding that the driver of the car yielding the suspect evidence was an unindicted coconspirator. This being so, such evidence would have been probative of Arthur's knowledge of the conspiracy and of the conspiracy's scope. See United States v. Martin, 920 F.2d 345, 348 (6th Cir.1990) (approving of inference that defendant knew and approved of coconspirator's actions and contraband), cert. denied, 111 S.Ct. 2038 (1991); see also Fed.R.Evid. 401 (defining "[r]elevant evidence" to include evidence having "any tendency" to make a consequential fact more or less probable).
 
 
 17
 Additionally, even assuming that the evidence was not relevant, given the record as a whole, its admission was not so prejudicial as to taint the validity of Arthur's conviction. See United States v. Mahar, 801 F.2d 1477, 1503 (6th Cir.1986) (evaluating claim of prejudice from evidentiary error against entire record). The sponsor of the evidence, Officer Bundy, conceded that no evidence connected Arthur to or demonstrated Arthur's knowledge of the seized items. Arthur's own attorney described Bundy, in closing argument, as a virtual "defense witness." Finally, the idea that admission of such evidence would weaken Arthur's "mere association" theory of innocence is spurious. When compared to Arthur's conceded presence at the site of numerous drug activities, it is difficult to perceive significant prejudice arising from Arthur's presence in a vehicle that carried evidence of drug activity in its trunk.
 
 III. Kenneth Kelly Harris
 A. Sufficiency of the Evidence
 
 18
 Regarding Count One (conspiracy), Kenneth concedes that evidence showed him to have used cocaine and also to have distributed drugs from his personal supply to others. However, he theorizes that such activity does not show agreement, as required for a conspiracy conviction.
 
 
 19
 Though the evidence Kenneth summarizes may not necessarily support the existence of an agreement, the testimony of two coconspirators does. Deborah Young testified that Kenneth had helped her and other conspirators package drugs at one of the sites raided by police. She also told of Kenneth's distributing drugs from the same address. Freda Wise and Gregory Davis, other coconspirators, described instances where Kenneth accompanied Defendant-Appellant Harris on deliveries of narcotics to drug houses. A disinterested witness told of Kenneth's frequent presence at one of Harris's rented apartments, another drug distribution locale. Finally, during one of the many raids, police arrested Harris, in the midst of drugs, weapons, and drug paraphernalia. The circumstantial strength of this evidence, when taken as a whole, clearly would allow a reasonable jury to convict Kenneth of having conspired under Count One.
 
 
 20
 Kenneth's Count Two theory, given only a paragraph in his brief, similarly fails. Though admitting possession of a single rock of cocaine and a handgun when arrested on April 29, 1988, Kenneth asserts that the Government did not show that he possessed the drug with intent to distribute. However, as noted previously, police arrested Kenneth during the raid of a house with drugs, weapons, and drug paraphernalia in open view. When considering this quality along with the other evidence indicating Kenneth's drug distribution activities, justification for the jury's decision is plain.
 
 B. Fourth Amendment
 
 21
 Kenneth also claims that the physical evidence seized from him during the April 29, 1988, arrest should have been suppressed. Police arrested Kenneth as they executed a search warrant at 4702 Glenn Street in Flint. First, Kenneth asserts that police failed to "knock and announce" pursuant to 18 U.S.C. § 3109 prior to entering the residence, tainting any evidence seized from him. Alternatively, Kenneth claims that the pat-down search yielding evidence was improper. Finally, even if the pat-down search was proper, Kenneth denies the existence of adequate grounds for a plenary search of his person.
 
 
 22
 As the Government correctly notes, Kenneth did not raise his statutory "knock and announce" theory at trial, thus limiting the development of the record regarding the issue. However, it is clear, from testimony of the arresting officers, that the police announced their presence, waited some fifteen seconds, and forcibly entered the residence only after "scurrying" sounds emanated from within. As such, the knock-and-announce requirements were satisfied.
 
 
 23
 Also, authorities legitimately chose to pat Kenneth down, an action that yielded the weapon addressed in Count Three. The police were raiding a suspected site of drug activity reported to contain at least one weapon. Further, sounds of commotion prompted entry by the police. When taken together, these facts provide the requisite articulable, reasonable basis for frisking Kenneth. See also United States v. Lane, 909 F.2d 895, 900 (6th Cir.1990), cert. denied, 111 S.Ct. 977 (1991).
 
 
 24
 Once inside the house, and after frisking Kenneth, authorities discovered indicia of drug activity. This environment provided probable cause for Kenneth's arrest, apparently on the charge of frequenting a drug house. As such, the plenary search of Kenneth that yielded cocaine was a valid search incident to arrest. See Chimel v. California, 395 U.S. 752 (1969).
 
 C. Count Three Surplusage
 
 25
 Finally, Kenneth argues that the district court erred in failing to strike certain enumerated weapons from Count Three, which charged the use of a firearm in connection with a felony drug offense. As discussed, authorities arrested Kenneth on April 29, 1988, and found on his person cocaine and a handgun. Count Three focuses not only on the weapon found in Kenneth's rear pocket, a .357 magnum, but also on other weapons seized from the site of the arrest. Kenneth asserts that nothing connected him to the other weapons, so they should have been stricken from the charge as surplusage, under Fed.R.Crim.P. 7(d).
 
 
 26
 Significant circumstantial evidence exists to support the notion that Kenneth constructively possessed all of the guns found at the site of his arrest. Witness testimony portrayed him not only as a frequenter of the house, but possibly as a resident thereof. Physical evidence found at the scene, e.g., identification cards and traffic citations, further linked Kenneth to the arrest site. Such evidence, taken as a whole, lends itself to a determination of constructive possession.
 
 
 27
 Even if Kenneth did not possess any of the other listed weapons, his conceded possession of the .357 handgun provides an adequate basis for conviction under Count Three. Possession vel non of other guns would have had no effect on the efficacy of the conviction or on ultimate sentencing. Thus, assuming the other guns listed were surplusage, no prejudice arose from their inclusion in Count Three.
 
 
 28
 * * *
 
 
 29
 * * *
 
 
 30
 For the foregoing reasons, the convictions and sentences of all Defendants-Appellants are AFFIRMED.
 
 
 
 [1]
 Because only five of nineteen originally indicted coconspirators went to trial, the initial sixteen-count indictment was redacted to six counts
 
 
 [2]
 Of the nineteen defendants originally indicted, only Defendants-Appellants and two others ultimately stood trial. The rest either cooperated with the Government or could not be located. The testifying coconspirators were Freda Wise, Gregory Davis, Deborah Young, Sheila Hill, and Brenda Cousins