UNITED STATES of America,
Plaintiff–Appellee,

v.

Morris PEARCE, (89–3990), Alan
Thorpe, (89–4003),
Defendants–Appellants.

Nos. 89–3990, 89–4003.

United States Court of Appeals,
Sixth Circuit.

Argued June 12, 1990.

Decided Aug. 31, 1990.

Robyn Jones (argued), Bradley D. Barbin, Office of the U.S. Atty., Columbus, Ohio, for U.S.

David J. Graeff (argued), Columbus, Ohio, for Morris Pearce.

Steven Mathless (argued), Columbus, Ohio, for Alan Thorpe.

Before KEITH and JONES, Circuit Judges; and ENGEL, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

Morris Pearce appeals his conviction for conspiracy to maintain a place to distribute cocaine base ("crack") in violation of 21 U.S.C. § 846 and possession with intent to distribute crack in violation of 21 U.S.C. § 841(a)(1). Alan Thorpe [1] appeals his conviction for conspiring to maintain a place to distribute and possess with intent to distribute crack, in violation of 21 U.S.C. § 846; aiding and abetting co-defendant Morris Pearce to possess with intent to distribute 4.9 grams of crack, in violation of 21 U.S.C. § 841(a)(1) and knowingly carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Because the evidence does not support a finding that Thorpe or Pearce were willful members of a drug conspiracy, we reverse as to the conspiracy and aiding and abetting charges. We affirm Thorpe and Pearce's possession convictions and Thorpe's firearms conviction.

## I.

On March 3, 1988, Columbus, Ohio police officers executed a search warrant at 418 S. Champion Avenue. The officers found two loaded nine millimeter semi-automatic weapons, but no drugs or persons. Police determined that the apartment was leased to a fictitious person named Lineth Westcarth. The interior was fortified extensively with plywood boarding and barricaded in a manner commonly found in crack houses.

Police searched the house again on March 10 after an informant purchased crack at the house with registered bills. A SWAT team entering the house encountered Richard Suel and his son (not defendants in this case), who had been hired to install window glass, new doors, and a buzzer doorbell. The SWAT team also encountered Thorpe, who ran into the basement yelling "it's a bust." Suel was in the basement drilling a hole for the door bell when Thorpe descended into the basement. At trial, however, Suel was unable to identify Thorpe and stated that he could not see if Thorpe was armed.

The SWAT team found Thorpe near an open floor drain containing two doses of crack. An open closet at the top of the basement stairs also contained one unit dose of crack. Nearby Thorpe, underneath a hot water tank, a fully-loaded .38 revolver was found. Officers also found a second .38 caliber gun, loaded except for one empty cylinder, at the base of the furnace where a panel was missing. In Thorpe's pocket was a live 9 millimeter round identical to those found in the gun. Police officers testified that the weapons could be seen upon entering the basement.

The police also found Morris Pearce sitting on a couch in the dining room. On the couch next to Pearce was a bag containing the registered bills which the informant had earlier used to purchase crack. Anoth-

1. Morris Pearce and Alan Thorpe were tried separately, but because of the overlapping facts and issues, their appeals are being disposed of in a single opinion.

er bag found next to Pearce contained 4.9 grams of crack.

On November 9, 1988, a federal grand jury for the Southern District of Ohio returned an indictment charging Pearce and Thorpe with conspiracy to maintain a place to distribute crack. In furtherance of the conspiracy, the grand jury charged Thorpe with maintaining firearms for protection while distributing crack. A second count charged Pearce and Thorpe with possession with intent to distribute 4.9 grams of crack. The third count charged Thorpe with carrying a firearm during and in relation to drug trafficking crimes.

At trial, a police officer testifying as an expert witness for the government stated that the house was fortified in a manner typical of crack houses and that when police enter these types of premises the occupants are likely to throw down their weapons and run.

Thorpe introduced medical records showing he had been hospitalized following an assault several weeks earlier. He claimed that he was in the house to search for the persons who had beaten him.

On January 13, 1989, a jury found Alan Thorpe guilty on the conspiracy, possession, and firearms charges. After the jury returned its verdict, the court ruled on Thorpe's motion for judgment of acquittal under Fed.R.Crim.P. 29. Thorpe claimed that the circumstantial evidence merely proved his presence at the scene of the crime, and that there was no evidence of an agreement to possess or distribute crack or that he was using or carrying a weapon. The district court denied the motion, finding that the evidence against Thorpe showed more than mere presence, and was enough to support a finding that Thorpe was aware the premises were used as a crack house, that the house was being raided for illegal drug activity, and that Thorpe's possession of the 9 millimeter round was sufficient to support an inference that he had control of at least one weapon in the house. On April 19, 1989, a second jury found Morris Pearce guilty on the conspiracy and possession charges. This timely appeal followed.

## II.

In determining the sufficiency of the evidence to support a guilty verdict "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

Thorpe and Pearce claim that the evidence is insufficient to sustain their convictions for conspiracy to possess and distribute crack under 21 U.S.C. § 846. Section 846 provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846 (1988).

As the district court correctly stated in its jury instructions, the essential element of conspiracy is that "the members of the conspiracy in some way or manner, or through some contrivance, came to a mutual understanding to try to accomplish a common and unlawful plan." J. App. (89–4003) at 243. Proof of a formal agreement is unnecessary, and a tacit or material understanding among the parties is sufficient to show a conspiracy. *United States v. Hughes,* 891 F.2d 597, 601 (6th Cir.1989). With respect to the proof of conspiracies involving drugs, "to obtain a conviction under section 846, the government must prove the existence of an agreement to violate the drug laws and that each conspirator knew of, intended to join and participated in the conspiracy." *United States v. Stanley,* 765 F.2d 1224, 1237 (5th Cir.1985). A conspiracy conviction should not be disturbed unless there is insufficient evidence from which a rational jury member could find beyond a reasonable doubt that the defendant was a member of a conspiracy. *United States v. Bourjaily,* 781 F.2d 539, 544 (6th Cir.1986), *aff'd,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987).

 The government's assertion that Thorpe and Pearce were engaged in a conspiracy to possess and distribute crack is not supported by the evidence. The record is devoid of any evidence that Thorpe and Pearce had entered into an agreement. Thorpe's mere presence in the house does not by itself demonstrate any tacit or mutual understanding between Thorpe and Pearce. Nor does the shouting of "It's a bust" at the moment the SWAT team forcibly entered the house point toward any agreement. Thorpe's exclamation was one which could easily have been made by any occupant of a house being raided by uniformed SWAT officers.[2] The government states that Thorpe's behavior at the time of the raid, together with the two guns which were found within Thorpe's reach, demonstrates his role in the conspiracy as a lookout. Although circumstantial evidence can be used to support a conspiracy charge, we find that the evidence in this case is insufficient to support Thorpe's conspiracy and aiding and abetting conviction.

In *Stanley*, 765 F.2d 1224, the Fifth Circuit reversed a jury's guilty verdict in a section 846 drug conspiracy case. Although the defendant was in a room with other defendants at the time of the arrest, the court stated that "mere association with conspirators is not enough to establish participation in a conspiracy." *Id.* at 1243. Moreover, although phone records seemed to indicate conversations between the defendant and the alleged co-conspirators, there was no evidence that the defendant had actually spoken with the other defendants. The court therefore reversed because, on the basis of the record, "the jury could not reasonably find that [the defendant] had the deliberate, knowing and specific intent to join the conspiracy...."

Although Thorpe's presence at 418 S. Champion on March 10, 1989 remains unexplained, it does not follow that his presence at the time of the raid, without more, is sufficient to support a conspiracy charge. In most instances, this court requires firm evidence of at least tacit coordination among conspirators in affirming conspiracy convictions. *United States v. Ellzey*, 874 F.2d 324, 328 (6th Cir.1989) (numerous contacts between conspirators over three-year period); *Hughes*, 891 F.2d at 601–02 (fact that conspirator held co-conspirator's checks over four year period sufficient to show tacit agreement); *Bourjaily*, 781 F.2d at 544 (evidence that a defendant transported cocaine and helped arrange sales sufficient to support conspiracy charge).

We also find that the government failed to meet its burden of proof with respect to the conspiracy charge against Pearce. Other than the fact that both Thorpe and Pearce were in the house at the time of the police raid, the government introduced no evidence of a connection between Pearce, Thorpe, or any third party to maintain a crack house or distribute crack.[3]

### III.

 Thorpe also argues that there was no evidence that he either carried or had control over any weapons found in the house. Actual possession of a firearm need not be shown, though, only that the firearm was under defendant's control and readily accessible. *United States v. Birmley*, 529 F.2d 103, 107 (6th Cir.1976). The arresting officer testified that the weapons were openly visible; thus, the fact that Thorpe placed himself so that the weapons were within reach, given the matching ammunition in his pocket, is enough to support an inference that Thorpe controlled weapons to be used for protection during drug-related transactions.

**2.** Testimony during trial showed that the government was unable to establish conclusively that it was Thorpe who yelled "It's a bust." J. App. (89–4003) at 73; J. App. (89–3990) at 101. The district court ruled that the statement was admissible over a hearsay objection either as an excited utterance or as a statement of a co-conspirator.

**3.** The repairman, Richard Suel, testified in both trials about meeting somebody named Bocca who gave him instructions about fortifying the house. Although the government's expert established that these fortifications are typical of those found in crack houses, no evidence was introduced to show any connection between Bocca and either Thorpe or Pearce.

## IV.

Thorpe contends that the trial court's jury instruction on the firearm count was plain error because it included the term "use", when the indictment only charged him with "carrying" a weapon. Thorpe did not object to the instructions on these grounds before the district court nor did he propose an alternate instruction. Fed.R.Crim.P. 30 states that:

No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection.

Thorpe did object to the instructions on other grounds and requested language stating that defendant must know the guns were there and were operable. Therefore, Thorpe has waived his right to appeal this particular issue, and the instructions are reviewable only for plain error. The government's only claims are that Thorpe had constructive possession over the firearm, not that he brandished or used the weapon during the course of the conspiracy. Thus the government's argument is consistent with the definition of carrying a weapon, not with use. The instructions given by the court were not a misstatement of the law. At most, the court provided the jury with more information than necessary, but the information was not erroneous or confusing. Therefore, the district court's instructions in the instant case do not constitute plain error.

## V.

Thorpe argues that the expert testimony offered through Sergeant Michael Manley, relating to firearms and their relationships to crack houses was prejudicial, unnecessary and irrelevant. He claims that Manley's testimony is contrary to eyewitness testimony in the case, and unnecessary because a layman could have reached the same conclusion.

Admission of expert testimony is a matter within the broad discretion of the court, and a decision to admit such testimony is to be sustained unless manifestly erroneous. *Apponi v. Sunshine Biscuits, Inc.*, 809 F.2d 1210, 1218 (6th Cir.), *cert. denied*, 484 U.S. 820, 108 S.Ct. 77, 98 L.Ed.2d 40 (1987). Law enforcement officers may testify concerning the methods and techniques employed in an area of criminal activity and to establish "modus operandi" of particular crimes. Knowledge of such activity is generally "beyond the understanding of the average layman." *U.S. v. Espinosa*, 827 F.2d 604, 611 (9th Cir.1987), *cert. denied*, 485 U.S. 968, 108 S.Ct. 1243, 99 L.Ed.2d 441 (1988).

In Thorpe's trial, the district court found that the testimony was permissible. The government had the burden of proving the link between the firearm and the underlying felony. The trial court's decision to permit the expert testimony occurred after all other evidence had been introduced. Although Thorpe claims the use of firearms in crack houses is common knowledge, he declined to so stipulate. This left the government with the burden of proving the element of the offense which connects the gun with drug trafficking. Manley's testimony was a permissible means of establishing the connecting element and the district court did not abuse its discretion in permitting the expert testimony.

## VI.

Pearce claims violation of his fifth amendment right not to testify by the prosecution's statement in closing arguments that either party can call witnesses. The prosecution's statement came in response to the following statement by Pearce's counsel in his closing argument:

Would it not be interesting to ask how Mr. Suel's son gained entry? Would his testimony be the same as his father's who said the back door was open? ... Don't you think there's a reason why the Government has chosen not to call [Suel's son]?

J. App. (89–3990) at 128. In response, the government stated in its closing argument:

The defense counsel in Mr. Janes now wants to ask why Suel, Jr., wasn't called

to this particular case. Do you recall him asking Mr. Suel, Sr., any of those questions at that time? Are you aware of the fact that either party can call witnesses, not just the Government?

*Id.* at 130.

Improper comments by a prosecutor to a jury can prejudice a defendant's right to a fair trial. *United States v. Smith*, 500 F.2d 293, 296 (6th Cir.1974). However, we find that the prosecution's remarks in this instance do not constitute undue prejudice. Defense counsel had implied the government had an improper motive for not calling Suel, Jr., to testify. The government's remarks were an attempt to respond to the defense's prior assertion and were not "manifestly intended" to reflect on the accused's silence." *Lent v. Wells*, 861 F.2d 972, 975 (6th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1577, 103 L.Ed.2d 943 (1989).

The *Lent* case discussed three additional factors for determining whether the prosecution's remarks unduly prejudiced the trial. First, the comments were isolated and did not reoccur. Second, strong evidence of Pearce's guilt as to the possession count existed. Finally, the district court gave an immediate curative instruction to the jury, reminding them that the burden is on the government to prove the defendant's guilt and that the defendant has no obligation to call witnesses or present evidence. Thus, we find that the government's remarks during closing arguments were not unduly prejudicial to defendant's right to a fair trial.

### VII.

For the foregoing reasons, the conspiracy and aiding and abetting convictions of Alan Thorpe, and the conspiracy conviction of Morris Pearce, are REVERSED. The convictions on the remaining counts are affirmed.