951 F.2d 350
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Odolph DANIELS, Wendell B. Daniels, and Frank Renfroe,
Defendants-Appellants.
 Nos. 90-1986, 90-1987 and 90-2018.
 United States Court of Appeals, Sixth Circuit.
 Dec. 26, 1991.
 
 Before BOYCE F. MARTIN, Jr. and MILBURN, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 On June 22, 1990, a jury convicted Odolph Daniels, Wendell Daniels, and Frank Renfroe of conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846, and possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. In addition, the jury convicted Wendell Daniels for distribution of cocaine.
 
 
 2
 The defendants raise numerous issues on appeal. Odolph Daniels and Frank Renfroe assert the district court abused its discretion by denying their motions for severance. Frank Renfroe asserts the district court abused its discretion by allowing an undercover agent to testify as an expert on coded drug terminology the agent and the defendants used during the transaction. Renfroe also asserts improper comments by the prosecutor violated his right to a fair trial and due process of law. Wendell Daniels asserts the district court abused its discretion in denying his motion for disclosure of the confidential informant and in allowing into evidence his 1988 claim to $80,000 dollars forfeited as drug money. All three defendants contest the district court's Federal Sentencing Guidelines calculations. We affirm the convictions but remand for resentencing with respect to two issues as described below.
 
 
 3
 Starting in September of 1989, an informant allowed FBI agents in Cleveland to monitor cocaine negotiations between himself and Wendell Daniels. The conversations resulted in a meeting on December 1, 1989, between the informant and Wendell Daniels in Daniels' Detroit, Michigan, residence. Undercover FBI agent Fredrick Snellings drove the informant from Cleveland to the meeting in Detroit and waited in the car while Daniels sold the informant one-half kilogram of cocaine for $13,500. After the transaction, the informant introduced agent Snellings to Daniels as his friend "Teddy." Two weeks later on December 15, 1989, agent Snellings contacted Wendell Daniels and told him that he would deliver the balance of the money owed for the December 1, 1989, transaction and that he would like to purchase more cocaine, this time independent of the informant. Attempts to arrange a five kilogram transaction failed because the agents could not secure enough funds. However, after further negotiations, Snellings agreed to purchase four kilograms. Wendell Daniels promised the agents that a fifth kilogram would be available if they could come up with more money.
 
 
 4
 On December 18, Snellings returned to Detroit with FBI special agent John Ligato where they met Wendell Daniels and Frank Renfroe at a Mobil gas station near Daniels' home. Daniels and Renfroe were accompanied by Renfroe's eleven year old son, DeAndre. Snellings and Ligato then followed Daniels and Renfroe to Daniels' residence. There, Renfroe called Wendell's brother Odolph and told him to contact Jason Young and have him deliver four kilograms of cocaine. Renfroe also directed Wendell Daniels to count the $100,000 dollars Ligato had in a gym bag. Snellings testified at trial that while waiting for the cocaine to arrive, Wendell Daniels spoke of cocaine sales he had made in Cleveland, Alabama, and Florida. In the meantime, Odolph had called Jason Young and asked for the cocaine. Young drove to Odolph Daniels' home and together Odolph and Young drove with the cocaine to Wendell's home. Upon arrival, Young carried the four kilograms of cocaine into Wendell's house. Odolph accompanied him inside and, after a minute or so, Odolph left the house and waited outside on the front lawn. After Renfroe, Young, Wendell Daniels and Odolph Daniels were arrested, the agents found another kilogram of cocaine inside a briefcase in the car driven by Young. Young admitted to owning the briefcase.
 
 
 5
 On January 4, 1990, a grand jury indicted Odolph Daniels, Wendell Daniels, and Frank Renfroe for conspiracy to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846, and possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. In addition, the grand jury indicted Wendell Daniels for distribution of cocaine. The jury trial for Wendell Daniels, Odolph Daniels, and Frank Renfroe began on June 11, 1990. Each of the defendants testified during the trial. Wendell Daniels claimed entrapment and Odolph Daniels and Frank Renfroe claimed that they were unaware a drug transaction was taking place. On June 22, 1990, the jury convicted the defendants as charged. The district court sentenced Wendell Daniels to 25 years in prison; Renfroe to 24 and a half years in prison; and Odolph Daniels to 15 years and 8 months in prison.
 
 
 6
 Both Odolph Daniels and Frank Renfroe assert the district court abused its discretion by denying their motions for severance. They each argue that the considerable evidence the United States had against Wendell Daniels resulted in prejudicial "spill-over" into the cases against them. Their motions for severance were not renewed following the completion of evidence, however. Both also argue Wendell Daniels' claim of entrapment created antagonistic defenses amongst the defendants resulting in prejudicial effects at trial, including the introduction of Wendell's 1988 claim to $80,000 dollars of alleged drug money found in a car in which Odolph was a passenger.
 
 
 7
 As a general rule, persons jointly indicted should be tried together. United States v. Causey, 834 F.2d 1277, 1287 (6th Cir.1987), cert. denied, 486 U.S. 1034 (1988). We will not disturb a district court's denial of a motion for severance unless there was an abuse of discretion. United States v. Gallo, 763 F.2d 1504, 1525 (6th Cir.1985), cert. denied sub nom. Graewe v. United States, 474 U.S. 1069 (1986). A great disparity of evidence alone will not serve as a basis for severance. United States v. Thomas, 728 F.2d 313, 319 (6th Cir.1984). A defendant can prove abuse only by making a strong showing of prejudice. Gallo, 763 F.2d at 1525. "Specifically, he must show an inability by the jury to separate and to treat distinctively evidence that is relevant to each particular defendant on trial." Id. Without a clear showing of specific and compelling prejudice resulting from a joint trial, the denial of a motion for severance will not be a basis for reversal. Id. at 1526. Even if some potential jury confusion is established, "this must be balanced against society's need for speedy and efficient trials." Id. at 1525. Lastly, we note our decision in United States v. Swift, 809 F.2d 320 (6th Cir.1987). In Swift, we ruled that motions for severance, not renewed at the close of evidence, are deemed waived. Id. at 323.
 
 
 8
 This court has recognized that there is always a danger a jury will convict on the basis of cumulative evidence, rather than evidence relating to each defendant, but "[t]he jury must be presumed capable of sorting out the evidence and considering the case of each defendant separately." Causey, 834 F.2d at 1288 (quoting United States v. Warner, 690 F.2d 545, 553 (6th Cir.1982)). Renfroe and Odolph Daniels have not overcome this presumption. Both defendants cite the strong evidence against Wendell Daniels. However, neither has shown any indication of prejudice that would merit a new trial. Only three defendants were tried in this case. The facts involved only two cocaine transactions. With respect to Wendell's 1988 claim to the $80,000 forfeited as drug proceeds, the judge gave limiting instructions three times. This case is not one of such complexity that the jury was unable to separate the evidence with respect to each defendant. Further, we observe that defendants failed to renew their severance motions at the close of evidence, resulting in the waiver of their severance requests. Swift, 809 F.2d at 323.
 
 
 9
 The district court did not abuse its discretion, as Renfroe argues, by allowing undercover agent Fredrick Snellings to testify as an expert on coded drug terminology the agent and the defendants used during the transaction. The admission of expert testimony by a law enforcement officer is a matter within the broad discretion of the trial judge and we will sustain admission of such testimony unless it was manifestly erroneous. United States v. Pearce, 912 F.2d 159, 163 (6th Cir.1990), cert. denied sub nom. Thorpe v. United States, 111 S.Ct. 978 (1991). Other circuits have ruled that it is not improper to permit a law enforcement officer to give expert testimony when such testimony will assist the jury. See, e.g., United States v. Hoffman, 832 F.2d 1299 (1st Cir.1987) (DEA agent permitted to "decode" drug negotiations in intercepted phone call). We note as well that almost all taped conversations decoded by Snellings occurred solely between Wendell Daniels and the informant; only one call contained Renfroe's voice. This furthers our belief that the district court did not abuse its discretion by allowing Snellings to testify as an expert on coded drug terminology with respect to Renfroe.
 
 
 10
 Renfroe also asserts improper comments by the prosecutor violated his right to a fair trial and due process of law. Because Renfroe did not object at trial to any of the prosecutor's comments he cites on appeal, this court reviews only for plain error United States v. Causey, 834 F.2d 1277, 1281 (6th Cir.1987), cert. denied, 486 U.S. 1034 (1988). Plain errors must have been apparent to the trial judge without objection, striking at the fundamental fairness, honesty, or public reputation of the trial. Id. Even if prosecutorial misconduct is found, in order for it to serve as the basis for a new trial it must be so "pronounced and persistent that it permeates the entire atmosphere of the trial." United States v. Krebs, 788 F.2d 1166, 1177 (6th Cir.) (quoting United States v. Blevins, 555 F.2d 1236, 1240 (5th Cir.1977), cert. denied, 434 U.S. 1016 (1978)), cert. denied, 479 U.S. 930 (1986). None of the six comments Renfroe refers to by the prosecutor strike at the fundamental fairness of the trial. The separate comments occurred during the period of a two-week trial. Given the nature of the comments, the length of the case, and the substantial evidence against Renfroe, we do not believe the comments serve as the basis for a new trial.
 
 
 11
 Wendell Daniels asserts the district court abused its discretion in denying his pre-trial motion for disclosure of the confidential informant. Daniels claims the disclosure and production of the informant was necessary to support his entrapment defense. Although Daniels knew the name of the government's informant and that he was from Cleveland, the only affirmative action Daniels took to obtain the informant for trial was to move for disclosure. Daniels failed to pursue the informant in any other manner. Because Daniels knew the name and hometown of the informant, we believe that Daniels could have solved his problems with a subpoena; thus, we conclude that the district court did not err in denying his motion.
 
 
 12
 Wendell Daniels also asserts the district court abused its discretion in allowing into evidence a claim he made in 1988 to $80,000 dollars, which police had seized as drug money. In his cross-examination, Daniels admitted claiming ownership of the money which was found hidden in a car that police stopped for a traffic violation. At trial, however, Daniels claimed that the money was not actually his and that he had no idea where it came from. Daniels now argues that this evidence was both irrelevant and prejudicial. The United States responds that Daniels' 1988 claim to the money was relevant to his entrapment defense because it showed predisposition and intent as well as substantiated Agent Snellings' testimony concerning Daniels' assertions of previous drug dealings.
 
 
 13
 Rule 404(b) authorizes the admission of "similar act evidence" unless the evidence is offered to prove character. The district court has broad discretion in making 404(b) evidentiary rulings. United States v. Ebens, 800 F.2d 1422, 1433 (6th Cir.1986). Daniels made relevant his predisposition to commit crimes by asserting entrapment. Thus, the district court did not abuse it's discretion in allowing into evidence Daniels' 1988 claim to the money that police had seized as drug proceeds.
 
 
 14
 Each of the defendants raises certain questions regarding the Federal Sentencing Guidelines. These Guidelines issues will be resolved in several upcoming en banc hearings. For example, the en banc hearing in United States v. Gessa, 90-5825/5903 (6th Cir. Aug. 29, 1991), reh'g en banc granted, ____________, will directly touch upon all three defendants' claims that the quantity of cocaine for which they were sentenced was improperly calculated. At this stage of the proceedings, the parties may await the determinations of the en banc court with regard to the applicable Guideline issues. Therefore, this case is remanded to the district court for reconsideration of the defendants' sentences based upon the upcoming en banc decisions. To ensure, however, that the posture of this proceeding remains so that the defendants may continue to raise their sentencing claims, the instant cases will remain in a status of nonactivity until the en banc decisions are rendered.
 
 
 15
 Thus, we affirm the judgment of the district court on all issues contained in this opinion except the sentencing guideline issues which are remanded as noted.