16 F.3d 1222
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
George Leonard FRANTUM, Defendant-Appellant.
 No. 93-1213.
 United States Court of Appeals, Sixth Circuit.
 Dec. 7, 1993.
 
 Before: KENNEDY, MILBURN and GUY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant George Leonard Frantum appeals his jury conviction for possession of a sawed-off shotgun in violation of 26 U.S.C. Sec. 5861(d). On appeal, defendant contends: (1) that remarks by the prosecutor constituted prosecutorial misconduct and denied him a fair trial; (2) that the District Court's statements to the jury panel during voir dire also resulted in denial of his right to a fair trial; and (3) that he was denied effective assistance of counsel at trial. Finding, to the extent there was error in the conduct of the trial, it was either waived or harmless, we affirm.
 
 I.
 
 2
 In December, 1991, Defendant George Frantum was the President and owner of Complete Building Maintenance, a janitorial business. Grant Dicken, Donald Curtis, and George Potter, a court officer executed a civil writ upon defendant's business in December, 1991. While executing this writ, Dicken found a sawed-off shotgun[1] contained in a pool cue carrying case. A full head "Coleman Young" mask, a black shoulder holster rig, the defendant's business cards, and a photograph of the defendant were found in the same office as the shotgun.
 
 
 3
 Dicken gave the sawed-off shotgun to Potter. Potter then reported the gun to the Troy Police Department. A jury found defendant guilty of possession of a sawed-off shotgun on November 3, 1992, and the court sentenced him to 27 months imprisonment. This timely appeal followed.
 
 II.
 
 4
 Initially, the defendant contends that the government made improper statements during its opening and closing arguments which denied the defendant his constitutional right to a fair trial. This Court will "reverse a conviction based upon prosecutorial misconduct only if the resulting prejudice permeates the entire trial." United States v. Roberts, 986 F.2d 1026 (6th Cir.), cert. denied, 114 S.Ct. 271 (1993). We do not automatically reverse a conviction for prosecutorial misconduct. Rather, "the complained of conduct will not rise to error, notably if it is not flagrant, where proof of guilt is overwhelming, where counsel does not object and/or where the trial judge steps in and admonishes the jury." United States v. Bess, 593 F.2d 749 (6th Cir.1979).
 
 
 5
 Since no contemporaneous objections were made, this panel reviews the allegation of prosecutorial misconduct for plain error. Plain errors are "particularly egregious errors," United States v. Young, 470 U.S. 1, 15 (1985) (quoting United States v. Frady, 456 U.S. 152, 163 (1982)), which " 'seriously affect the fairness, integrity or public reputation of judicial proceedings.' " Id. (citing United States v. Atkinson, 297 U.S. 157, 160 (1936)). This Court has stated that "inappropriate remarks by the prosecutor do not alone justify reversal of a criminal conviction in an otherwise fair proceeding, as long as the jury's ability to judge the evidence fairly remains intact." U.S. v. Castro, 908 F.2d 85, 89 (6th Cir.1990). The Supreme Court recently in United States v. Olano, 113 S.Ct. 1770 (1993), reiterated that plain error must affect substantial rights to permit reversal. Then the Court of Appeals may also exercise its discretion to correct a plain forfeited error if the error seriously affects the fairness of integrity or public reputation of judicial proceedings.
 
 A. References to Statutory Scheme
 
 6
 Defendant initially argues that the government improperly referred to Congressional intent in the government's opening statement where the prosecutor said,
 
 
 7
 I'd like to start by just explaining the charge a little bit to you. Ordinarily, it's perfectly lawful in this Country to possess firearms, possess firearms, rifles, whatever you can; even possess a pistol if you have a permit. But Congress has decided there are certain types of weapons that are too dangerous to be possessed. One is a machine gun; another such one is a sawed-off shot gun.
 
 
 8
 Joint App. at 65 (emphasis added).
 
 
 9
 This Court has held that reference to Congressional intent may constitute prosecutorial misconduct justifying a new trial. See United States v. Leon, 534 F.2d 667, 680 (6th Cir.1976) (the prosecutor extensively referred to Congressional findings for federal gambling statute and ultimately characterized the defendant's "gambling activities as part of a nationwide scheme that was causing substantial hardship to innocent persons, that was effecting the decay of our cities, and that was financing other criminal activity").
 
 
 10
 However, the prosecutor's statements here only contain one reference to Congressional purpose. The government did not delve into the Congressional findings supporting the passage of the law. The reference to machine guns was arguably improper, however, the error is not plain nor does it meet the standard which would justify reversal.
 
 B. References to the Halloween Mask
 
 11
 When Dicken found the sawed-off shotgun at the corporation's office, he also found a mask bearing the likeness of Coleman Young. Defendant argues that the prosecution introduced evidence of this mask in order to convey that defendant was involved in criminal activity, an inappropriate trial tactic. Further, the defendant argues that the prosecution improperly argued about the mask in his closing argument. In closing, the prosecution stated, "[the shotgun] was found with a rubber mask. You can reach your own conclusion why that was. We don't have to prove anything was done with this firearm, we merely have to prove possession." Joint App. at 189.
 
 
 12
 The defendant testified and denied knowing that the gun was in his office. He explained that the mask belonged to his son's friend and had apparently been left in defendant's van when he transported the children from a Halloween party. He surmised that one of his employees could have brought the mask into his office from the van. The jury might infer, however, that since defendant was in possession of the mask, it was defendant who brought the mask into the office and its location next to the shot gun indicates that he brought them both.
 
 
 13
 Even if the prosecutor's statement was improper, it is not one of those errors that is "so rank that it should have been apparent to the trial judge without objection, or that strike at fundamental fairness, honesty, or public reputation of the trial." United States v. Driscoll, 970 F.2d 1472, 1485 (6th Cir.1992), cert. denied, 113 S.Ct. 1056 (1993).
 
 C. References to Gang Membership
 
 14
 The defendant next argues that the prosecution attempted to associate the defendant with a well-known outlaw motorcycle gang, the "Highway Men" by introducing a business card bearing the gang's name and the defendant's name. This argument has no merit. The only card introduced into evidence was a business card bearing the name of defendant as President of Complete Building Maintenance. The only reference to the "Highway Men" arose in David Potter's testimony:
 
 
 15
 Government: Okay. I want to show you Government proposed Exhibit Number 3. On Government Exhibit 3, there is a photograph and there is also a business card for Complete Building Maintenance. First, with respect to the photograph, is that photograph a fair depiction of approximately how Mr. Frantum looked in December of 1991?
 
 
 16
 Mr. Potter: Yes.
 
 
 17
 Government: Is the business card that is copied onto that piece of paper, is that the business card that was located on the desk in the office where the mask was found?
 
 
 18
 Mr. Potter: I remember one business card that had the Highway Men's--Joint App. at 101.
 
 
 19
 Defense counsel immediately objected and the court sustained the objection. There is no other reference to the "Highway Men" in the record. The defendant's argument that the government tried to associate him with the "Highway Men" has no merit.
 
 
 20
 D. Reference to Defendant's Financial Status
 
 
 21
 Defendant next contends that the government improperly drew the jury's attention to his financial status in opening argument. In opening argument, the government stated:
 
 
 22
 And in this case we're going to prove to you that on December 16, 1991 some private parties, not police officers, private parties, just happened on to this sawed-off shotgun when they were serving a civil writ of execution. And the civil writ of execution is where someone owes a debt, they don't pay, and you go in and take their property. In the course of doing that, these private individuals happened on to this sawed-off shotgun.
 
 
 23
 Joint App. at 66-67. This statement merely provides the jury with the circumstances surrounding the discovery of the gun. There was nothing improper in explaining what the evidence would show as to the discovery of the gun.
 
 E. Reference to the Shotgun as Dangerous
 
 24
 Defendant next argues that the government acted inappropriately when it referred to the sawed-off shotgun as dangerous. In closing, the government stated:
 
 
 25
 [Defense counsel] suggested this was a minor matter, and I don't want you to underestimate the seriousness of this offense. This is a very dangerous weapon. As you can see, it can be easily concealed. It was concealed in a pool cue case where it could be carried around and anyone on the street could see it was a pool cue. You see what kind of firepower it has. It cannot be used for hunting. You can see why Congress makes you register it.
 
 
 26
 Joint App. at 189.
 
 
 27
 The government argues that this statement was appropriate to convey the importance of the offense to the jury. The government also argues that this closing argument was made in response to defendant's closing argument.[2] See United States v. Pearce, 912 F.2d 159, 163-64 (6th Cir.1990), cert. denied, 498 U.S. 1093 (1991). We reject the argument that this was an invited response. Defense counsel's argument was not an attempt to minimize the importance of the offense but was an attempt to convey the defendant's theory that the government wasn't sure they could prove Frantum's knowledge of the gun. However, it does not arise to the level of plain error.
 
 
 28
 F. Reference to Defendant's Play for Sympathy
 
 
 29
 Defendant next argues that the government improperly raised the issue of sympathy for the first time in rebuttal, not in response to any argument by defense counsel. Defendant had testified that he lived with his wife and three children and had been in the janitorial business for twenty-five years. Defense counsel did not refer to defendant's family although he did discuss the nature of defendant's business in his closing. In rebuttal, the government argued:
 
 
 30
 [T]he Defense made great pains that the Defendant had this business for 25 years, he is married and has children. Why do you think that is? Why do you think he wanted you to know that? I suggest to you that he wanted to play upon your sympathy: Well, if the guy got a family, we will just let him go, we won't find the facts as it came from the witness stand. And the Judge will tell you you're to put aside all sympathy, passion and prejudice. And that those are really matters for the Judge later at sentencing. Your job merely is to find the facts; what is true and what is not true in this case.
 
 
 31
 Joint App. at 189-90.
 
 
 32
 To the extent the prosecutor raised a point not argued by defense counsel, the prosecutor's rebuttal comment was improper. However, this testimony was presented at trial and it does not appear that the government's statements rose to the level of plain error. This statement simply was not egregious and did not undermine the jury's ability to judge the evidence fairly.
 
 G. Statements of Personal Opinion
 
 33
 Defendant next contends that the prosecutor expressed his personal opinion of the defendant's guilt in his closing and rebuttal arguments. Defendant specifically refers to two statements. In his closing argument the prosecutor stated:
 
 
 34
 He said it [the conversation regarding the shotgun][3] never happened. If it happened, Mr. Frantum is guilty; if it didn't happen, you should find him not guilty. I submit the evidence in total indicates that Mr. Frantum is guilty of this offense. Thank you."
 
 
 35
 Joint App. at 181-82 (emphasis added).
 
 In rebuttal, the prosecutor stated:
 
 36
 Really, your job today is to decide did George Frantum possess a firearm, or did he not. And I submit it comes down to if that conversation happened or didn't it. And I submit if it did happen, and I submit that it did because we have two witnesses who say so. And if it did, you should find him guilty as charged.
 
 
 37
 Joint App. at 190-91 (emphasis added).
 
 
 38
 The prosecutor may not express his personal opinion of the defendant's guilt. United States v. Bess, 593 F.2d 749 (6th Cir.1979). However, the prosecutor does not express his personal opinion by stating, "I submit...."
 
 
 39
 In United States v. Stulga, 584 F.2d 142 (6th Cir.1978), we concluded that the use of the words "I submit" were not the equivalent of expressing a personal opinion. Rather, the Court concluded that when a prosecutor says I submit, this is the equivalent of saying "I submit that upon the facts as shown by the evidence." Id. at 147. There was no error.
 
 H. Vouching for Witnesses
 
 40
 Defendant also claims that the prosecutor improperly vouched for the credibility of the government's witnesses. "A government attorney has a duty not to express a personal opinion or belief regarding the truth or falsity of any testimony or evidence." United States v. Hurst, 951 F.2d 1490, 1502 (6th Cir.1991), cert. denied, 112 S.Ct. 1952 (1992). However, once again the prosecutor merely used the words "I submit." This is not an expression of personal opinion of credibility.
 
 
 41
 Thus, while a few of the statements by the prosecutor were inappropriate, none, either alone or together, reached the egregious level required to reverse a conviction for plain error.
 
 III.
 
 42
 The defendant next contends that the District Court erred in its statements to the jury during voir dire, which resulted in a denial of his right to a fair trial. The defendant specifically argues that the District Court denigrated the jury's role in the judicial process, the District Court improperly expressed its opinion that private people should not be allowed to possess firearms, and finally the District Court improperly shifted the burden of proof to the defendant.
 
 
 43
 Defendant must make timely objections to voir dire. In the case sub judice, no objections were offered. Thus, the defendant urges this Court to find that the judge's comments constituted plain error under Fed.R.Crim.P. 52(b).
 
 
 44
 Initially, the defendant argues that the District Court committed plain error by telling the jury venire members they could avoid jury duty by lying about their bias and prejudice. While we agree that the judge's remarks were inappropriate, defendant made no objection.[4] We are unable to see how defendant could be harmed by the statement.
 
 
 45
 Next, the defendant argues that the District Court erroneously stated that the District Court itself believed that private citizens should not carry weapons. The following occurred during voir dire:
 
 
 46
 [Court] Now, are there any jurors among you who have such strong feelings about the charge itself that you don't think you would be able to set it aside, decide this case solely upon the evidence that the Court allows in the record and render a far [sic] and impartial verdict? Any of you feel that way?
 
 
 47
 [Juror] I don't feel anyone should have any kind of weapon, any kind of gun other than the law. I don't believe anyone should have in their personal possession--
 
 
 48
 [Court] Well, I didn't ask you that. I don't think so either. So what the question is has it left you with a bias or prejudice that you feel you cannot set aside?
 
 
 49
 [Juror] Prejudice, yes.
 
 
 50
 Joint App. at 16-17 (emphasis added). The District Court should not have expressed its belief in the propriety or impropriety of gun ownership. However, the District Court immediately drew a critical distinction between a juror's general attitude and the juror's ability to remain unbiased. The court's statement, while inappropriate, was a single statement which was immediately tempered by the judge's distinction between bias and general belief. We do not see how the statement could impact on the only issue in the case, whether defendant possessed an illegal weapon. Any error was harmless.
 
 
 51
 We find no error in the court's charge on reasonable doubt or its statement on the purpose of opening statements. None of the errors by either the prosecutor or court undermined the fairness of the trial.
 
 IV.
 
 52
 Finally, defendant argues that he was denied effective assistance of counsel because his trial counsel failed to present certain evidence. Defendant failed to make this claim in the District Court.
 
 
 53
 Generally, this Court will not review an ineffective assistance of counsel claim raised for the first time on appeal. United States v. Daniel, 956 F.2d 540, 543 (6th Cir.1992). Rather, these claims are properly heard in a post-conviction proceeding under 28 U.S.C. Sec. 2255 so that an adequate record can be developed. We see no reason to depart from that procedure here.
 
 V.
 
 54
 Accordingly, the judgment of the District Court is AFFIRMED.
 
 
 
 [1]
 The sawed-off shotgun was not registered to Frantum in the National Firearms Registry
 
 
 [2]
 The government refers to the following statement made by defense counsel in closing, "[f]or instance, the alleged instance occurred December 16th of 1991. The evening of December 16, 1991, Mr. Frantum is not notified of any problem until the following day, at least 12 hours or better. The police were notified before he was. The officer in charge of this case with the ATF did not go over to see this gun until sometime in February; some two months later. And then the investigation supposedly started. All this being without the knowledge of Mr. Frantum. So you can see the situation where that I think under these circumstances even they were not convinced that they had--that they could prove that Mr. Frantum had knowledge of this weapon." Joint App. at 187-88
 
 
 [3]
 On the day after the shotgun was found, defendant gave Potter some additional money for the debt. At this time, Potter gave defendant a receipt for the goods seized and keys to the new locks on the business office. Potter testified that "[o]ne of his [Frantum's] associates went to the door and opened the door, and he went inside the building for maybe two or three minutes and came back out, and he said George, I've got to talk to you. And Mr. Frantum said, 'Just a minute.' And he said, 'No, I've got to talk to you right now, it's important.' And I think at that point I told Mr. Frantum if it was about the shotgun, Troy police had it. And at that time, he [Frantum] asked me what was going to happen. And I believe he asked me if he would be able to get it [the shotgun] back." Joint App. at 92. The defendant asserts that this conversation did not take place
 
 
 [4]
 The district judge stated:
 Now, if you can't set any bias or prejudice that you might have aside, tell me and I'll excuse you. Now that when somebody told you, boy, it's tough to get out of jury duty, you know they're wrong. All you have to do is sit there and tell a little white lie that I can't get rid of my bias and prejudice and I'll let you go anywhere. Because Jury duty is such an important function, so important a constitutional function, if you don't want to serve, that's your business, and I just soon not have you anyway. So you have this serious obligation of deciding whether you can sit as a juror in this case and set aside any bias or prejudice that you might have. Decide this case solely on the merits.
 Joint App. at 15 (emphasis added).