16 F.3d 1222
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Eugene KIMBLE, and Marion Driscoll, Defendants-Appellants.
 Nos. 93-1252, 93-1462.
 United States Court of Appeals, Sixth Circuit.
 Feb. 22, 1994.
 
 Before: KEITH and RYAN, Circuit Judges, and JOHNSTONE, Senior District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Defendants Eugene Kimble and Marion Driscoll were charged in the same indictment with various drug trafficking offenses, but were tried separately. These cases were consolidated for appeal. Kimble was convicted on two counts of aiding and abetting the distribution of crack cocaine, in violation of 21 U.S.C. Sec. 841(a)(1). We are required, in Kimble's appeal, to decide issues concerning the exchange of peremptory challenges by the government, the admissibility of evidence, and the trial court's refusal to compel a witness to testify.
 
 
 2
 Marion Driscoll was charged with and convicted of two counts of drug-related activity: aiding and abetting the distribution of cocaine base, in violation of 21 U.S.C. Sec. 841(a)(1), and distribution of cocaine base, in violation of 21 U.S.C. Sec. 841(a)(1). He raises a single issue concerning the admissibility of expert opinion evidence.
 
 
 3
 We affirm on all issues in both appeals.
 
 I.
 
 4
 Special Agents Regan Scott and Alan Jakubowski of the Bureau of Alcohol, Tobacco, and Firearms were conducting an undercover operation involving firearms and drugs in Detroit, Michigan. They were attempting to locate a man named "Kade." During their search, Agent Jakubowski spotted Eugene Kimble. Jakubowski knew that Kimble was acquainted with Kade, so he asked Kimble if he knew where Kade could be found. Kimble said he did not, but that he might be able to assist the agents. Scott told Kimble they wanted to buy crack, and Kimble indicated he could help. Kimble took the two agents to a house on Lakewood Avenue to purchase crack cocaine.
 
 
 5
 When they arrived at the house, Kimble took Agent Scott to the back of the house, where Kimble knocked on a window. Marion Driscoll responded to the knock. Kimble introduced Scott, who asked Driscoll if Driscoll could sell him some crack. Driscoll said yes, and Scott handed $20 to Kimble, who passed it to Driscoll. Driscoll handed four rocks of crack to Kimble, who passed them to Scott.
 
 
 6
 Several days later, the two agents returned to the Lakewood house to buy more crack. When they arrived, however, they found the front door padlocked and the house shut down. The agents then saw Driscoll sitting in a car in front of the house. Two other people were also in the car: a young woman, who was seated in the front with defendant, and a young man, who was sitting in the back.
 
 
 7
 Agent Scott walked to the car window closest to Driscoll and asked for some crack. Driscoll turned to the woman, later identified as "Princess," who reached in her coat and handed a bag to defendant. Driscoll took four rocks out of the bag and sold them to Scott for $20. Driscoll was arrested shortly after this transaction. After he was taken into custody, Driscoll made a written statement in which he admitted being present during the drug deal, but claimed that the deal actually occurred between Princess and Scott.
 
 
 8
 Two days later, the agents returned to the Lakewood house to buy more crack. When they did not see Driscoll, the agents went to Kimble's house. Kimble told the agents he did not know where Driscoll was, but he had another connection who would sell them crack. Kimble then called his son, Leonard, over and Leonard sold the agents some crack. After the agents paid Leonard, Eugene Kimble demanded and received compensation for setting up the deal. Eugene Kimble was later arrested. He testified at trial that his only role was to point out the crack houses to the agents, and tha the agents paid him for his assistance. He denied doing anything illegal and claimed that he did not aid and abet anyone. We will relate the other pertinent facts when discussing the various assignments of error.
 
 II.
 Kimble's Appeal
 A.
 Peremptory Challenges
 
 9
 During jury selection in Kimble's case, the prosecution exercised five peremptory challenges. These challenges struck three black and two white jurors. The jury empaneled to hear Kimble's case did include two black members. Kimble's attorney expressed concern, pursuant to Batson v. Kentucky, 476 U.S. 79 (1986), over the exclusion of the three black jurors. The district court conducted a Batson hearing and asked the prosecutor to state the reasons for the challenges. The prosecutor stated that all of the potential jurors, both whites and blacks, were struck because they were young and unmarried. The prosecution felt that these people did not have the same "stake in the community" as the older jurors, by which he meant, presumably, a diminished interest in eliminating drug trafficking. The prosecutor also pointed out for the record that he was black and had been very active in civil rights causes. The defense attorney continued his objection based on racial discrimination, but also argued that the prosecutor had engaged in age discrimination. In addition, he argued that the prosecutor had not presented sufficient reasons to justify his challenges.
 
 
 10
 The court denied defendant's motion, stating:
 
 
 11
 The Court will deny the motion for mistrial. I note that the reasons that have been given by Mr. Holman are facially acceptable. One as a trial lawyer may disagree as to the value or the purpose of selecting or removing persons because of their age. But I believe that that is an approach and a basis upon which a trial counsel may exercise a peremptory challenge. I do note that two of the jurors, who are more senior than the persons who were removed, are black. They are part of this jury and will be in a position to make a judgment as to the innocence or guilt of Mr. Kimble.
 
 
 12
 There is one final note which is a factor, but not, in my judgment, a major one, namely; that Mr. Holman, the counsel for the Government, is also black.
 
 
 13
 Looking at the Government's actions in its totality, it is my conclusion that Mr. Holman did not violate the constitutional rights of Mr. Kimble; and, thus, the motion that has been presented to the Court by him must be and is rejected.
 
 
 14
 Kimble argues that the government's reasons for striking the three black jurors are pretextual. He also contends that, even if those reasons are valid, the government still discriminated against young, unmarried jurors in violation of Batson. We note that on appeal, the district court's factual findings regarding the prosecution's asserted justifications for the challenges should not be overturned unless they are clearly erroneous. United States v. Peete, 919 F.2d 1168, 1179 (6th Cir.1990).
 
 
 15
 In Batson, the Supreme Court declared that a prosecutor may not exercise peremptory challenges to exclude potential jurors solely because of their race. The Court also announced a procedure to be used by courts to assess Batson -type challenges:
 
 
 16
 The Batson Court enumerated three elements of a prima facie case of purposeful discrimination. First, the defendant must show that he is a member of a cognizable racial group and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact "that peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.' " Third, the defendant must show that "these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." Once the defendant has made out a prima facie case, the burden shifts to the government to come forward with a neutral explanation for challenging Black jurors.
 
 
 17
 United States v. Hatchett, 918 F.2d 631, 636 (6th Cir.1990), cert. denied, 111 S.Ct. 2839 (1991). This court has also noted that a prima facie case of juror discrimination is weakened if a prosecutor does not use all available peremptory challenges, and the jury which is seated contains members of defendant's minority group. United States v. Sangineto-Miranda, 859 F.2d 1501 (6th Cir.1988).
 
 
 18
 It is not at all clear that Kimble has made out a prima facie case of discrimination under Batson. Assuming, however, that he has, he has not shown that the district court's decision to accept the prosecutor's proffered nondiscriminatory justification was clearly erroneous. Kimble has argued that the prosecutor's reasons were pretextual, but he has provided no support for that argument. He has not pointed to any evidence, except the fact that three black potential jurors were struck, that would support a finding that the prosecutor discriminated against potential jurors. The district court found that this was not enough to support a finding of discrimination in light of the prosecutor's explanations for the challenges. Kimble has not proffered any reason to reject this conclusion.
 
 
 19
 Kimble has argued, in the alternative, that the prosecutor discriminated against young, unmarried people. He has not, however, given this court any reason to extend the protections of Batson to age and marital status. Furthermore, he has not cited any cases that have extended Batson that far. In any event, Kimble is neither young nor unmarried, and therefore is without standing to contest the exclusion of the challenged jurors from the panel. We affirm the district court's finding that there was no violation of Batson.
 
 B.
 Rule 609 Evidence
 
 20
 In an earlier state court prosecution, Kimble was sentenced to lifetime probation for delivering less than 50 grams of crack. Before Kimble's federal trial, the prosecution indicated that it intended to use this evidence under Fed.R.Evid. 609, should Kimble choose to testify. Kimble then filed a motion in limine to prevent the use of the evidence, claiming that it was not relevant and that it would be overly prejudicial. The government responded to this argument by contending that if Kimble testified, the evidence would be probative of his credibility and that a cautionary instruction could cure any potential prejudice.
 
 
 21
 In denying Kimble's motion, the district court stated:
 
 
 22
 The applicable rule in this case is Federal Rule of Evidence 609. The Court recognizes that there is a possibility that a jury may conclude that a person who committed one offense is guilty of the offense with which he has been charged and is on trial.
 
 
 23
 I note that the determination of guilty in the State Court occurred in December of 1990. The offenses with which Mr. Kimble has been charged allegedly occurred within one calendar year of the offenses which bring[ ] him into this courtroom today. The offenses are essentially or ostensibly the same. The facts may be somewhat different.
 
 
 24
 While recognizing the difficulty that this places the Defendant in, the Court believes that there is a sufficient relationship and nexus between the credibility of Mr. Kimble and the offenses which bring him into the courtroom today. Thus, the Court believes that the 403 prejudice upon which Mr. Kimble bases his argument are not, in my judgment, sufficient to outweigh the probative value: and, hence, the Court will decline to grant the motion in limine which has been requested by Mr. Kimble. The Court, thus, will not preclude [the prosecution] from introducing the criminal record of Mr. Eugene Kimble in the event he takes the stand.
 
 
 25
 Kimble claims that the prosecution introduced his prior conviction solely to convince the jury that if defendant had "done it once, he would do it again." Kimble also maintains that his credibility was not at issue. Rather, the only issue should have been the events surrounding the transactions on September 27th and October 10th. Finally, Kimble contends that the cautionary instruction was not sufficient to cure the prejudice of this evidence.
 
 
 26
 This court reviews decisions to allow evidence under Rule 609 for abuse of discretion. United States v. Meyers, 952 F.2d 914, 916 (6th Cir.), cert. denied, 112 S.Ct. 1695 (1992). Fed.R.Evid. 609(a) provides that
 
 
 27
 [f]or the purpose of attacking the credibility of a witness,
 
 
 28
 (a) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused....
 
 
 29
 A leading case on the application of Rule 609 requires that a district judge balance five factors:
 
 
 30
 (1) The impeachment value of the prior crime.
 
 
 31
 (2) The point in time of the conviction and the witness' subsequent history.
 
 
 32
 (3) The similarity between the past crime and the charged crime.
 
 
 33
 (4) The importance of the defendant's testimony.
 
 
 34
 (5) The centrality of the credibility issue.
 
 
 35
 Gordon v. United States, 383 F.2d 936, 940-41 (D.C.Cir.1967), cert. denied, 390 U.S. 1029 (1968). Our circuit has taken note of these factors with approval, but does not explicitly require that the district court address each one. Instead, we require that a district court hold an on-the-record hearing and make explicit findings as to whether the prejudicial impact of the proffered evidence outweighs its probative value. United States v. Moore, 917 F.2d 215, 234 (6th Cir.1990), cert. denied, 499 U.S. 963 (1991).
 
 
 36
 The district court held the required hearing and made the required on-the-record findings. Specifically, the court found that the potential prejudice of the evidence did not outweigh its probative value. Kimble has presented no arguments showing that the district court abused its discretion. Kimble took the stand in his own defense and denied any wrongdoing. He also contradicted the testimony of the agents' in several particulars. Consequently, he put his credibility at issue and the prosecution was entitled to attempt to impeach Kimble with his prior criminal record. The district court also issued an instruction to the jury limiting the use of this evidence, in language that conformed precisely to the Sixth Circuit's Pattern Jury Instructions. Consequently, we affirm the district court's decision to admit the Rule 609 evidence.
 
 C.
 Witness Driscoll's Testimony
 
 37
 Shortly before the beginning of Kimble's trial, Kimble and his attorney saw Marion Driscoll in the courtroom. Kimble told his attorney that he had never seen Driscoll before. Evidently, Kimble's attorney spoke to Driscoll, because the attorney stated that Driscoll also confirmed that he had never seen Kimble before that date. Kimble's attorney decided that he should call Driscoll to the stand so the jury could hear this evidence.
 
 
 38
 The district court held a hearing on this issue outside the presence of the jury, at which Driscoll and his attorney were present. Driscoll's trial was not due to start for a couple more weeks. Kimble's attorney stated that he wished to call Driscoll to the stand for the limited purpose of asking him whether he had ever seen Kimble before that day in the courtroom. Driscoll's attorney stated that he had advised his client not to take the stand. If required by the court to do so, Driscoll would invoke the Fifth Amendment. Driscoll indicated no intention to reject this advice. The district court denied Kimble's motion to force Driscoll to testify.
 
 
 39
 Kimble argues that the district court should either have forced Driscoll to testify on the limited issue of whether the two men had met previously or should have postponed Kimble's trial until after Driscoll's trial was completed. Kimble cites no authority to support his argument. The government, however, has invited our attention to a Tenth Circuit case which addresses this issue in almost identical circumstances. United States v. George, 778 F.2d 556 (10th Cir.1985).
 
 
 40
 In George, the defendant was convicted of voluntary manslaughter. The defendant wanted to call his brother as a witness on his behalf. Apparently, the brother had also been involved in the homicide. The trial court permitted the defendant to call his brother as a witness, outside the presence of the jury, for the limited purpose of determining whether the brother would invoke the Fifth Amendment. The brother testified that he would invoke the Fifth, and the district court refused to allow the defendant to call his brother as a witness before the jury, solely so the jury could hear the brother invoke the Fifth. The Tenth Circuit upheld this procedure, and also declared that the trial court's actions did not violate the defendant's Sixth Amendment rights of compulsory process. Id. at 562-63.
 
 
 41
 Even if Driscoll had been sworn as a witness and had invoked the Fifth Amendment, that action would not have provided the jury with any probative evidence. An invocation of the constitutional privilege conveys no substantive information. Kimble took the stand and denied knowing Driscoll; he was able, therefore, to present his side of the story to the jury. Kimble has offered no sound reason why this court should overturn the district court's decision.
 
 III.
 Driscoll's Appeal
 Expert Opinion Testimony
 
 42
 At Driscoll's separate trial, the prosecutor attempted to elicit testimony from Agent Scott regarding the woman in the car with defendant. Apparently, some drug dealers work with a woman who carries their "bag" of crack. This woman is usually known as a "bag woman." Some drug dealers apparently believe that, in the event of an arrest, the police are less likely to search the woman and find the crack. The prosecutor wanted the jury to know about this practice, to refute any attempt by Driscoll to claim that Princess was really the dealer, not him. Driscoll had made this claim in the written statement he gave to the police following his arrest. The following colloquy occurred during Agent Scott's testimony:
 
 
 43
 Prosecutor: Now, based on your experience in drug cases, was there anything indicated by the fact that there was a woman in the car with the Defendant and she was carrying the drugs?
 
 
 44
 Scott: Yeah--
 
 
 45
 Defense counsel: Well, Your Honor, I don't know what the foundation is for this answer. My understanding is he is talking about his experience in other matters. What does it mean to have a woman in the car or something, I don't know what this means.
 
 
 46
 ....
 
 
 47
 Court: I will overrule the objection on this basis....
 
 
 48
 I believe that Agent Scott can indicate that his opinion is based on prior experiences for his conclusion that there is a possibility that this woman may have been working with Mr. Driscoll. I do not believe at this stage that there has been a nexus to establish that she was in fact a bag woman, if you will, for Mr. Driscoll.
 
 
 49
 Agent Scott has testified that he has extensive experience in drug activity. On the basis of that experience, he has developed certain opinions and conclusions with regard to the activities of possible drug offenders. One is the use of a bag woman to assist a male counterpart in drug activities.
 
 
 50
 I am not satisfied at this point that there is a sufficient basis for establishing that a nexus exists between the bag woman and Mr. Driscoll. I believe he can use his experience as the basis for his conclusion that a woman could possibly have been used as a bag woman and, thus, arousing his suspicions about this woman.
 
 
 51
 Agent Scott then testified about the practice of using bag women. He also testified that the drug deal was between himself and Driscoll, that he stood at the side of the car near Driscoll, and that Driscoll asked the woman for the bag of crack cocaine.
 
 
 52
 Driscoll's argument is premised on Fed.R.Evid. 702 and 704, relating to expert testimony. The reliance of proffered evidence, including expert testimony, is a matter within the trial court's discretion. See United States v. Moore, 917 F.2d 215, 233 (6th Cir.1990), cert. denied, 111 S.Ct. 1590 (1991); United States v. Pearce, 912 F.2d 159, 163 (6th Cir.1990), cert. denied, 498 U.S. 1093 (1991). Apparently, the trial court accepted Agent Scott as an expert on narcotics transactions. Driscoll admits that experts are allowed to testify regarding the ultimate fact to be decided by the jury, but any such testimony must assist the jury in deciding a relevant issue in the case. According to defendant, the testimony regarding bag women did not help the jury, especially as no conspiracy charges were brought, and the woman was never arrested. In addition, Driscoll maintains that the evidence prejudiced him because:
 
 
 53
 The jury contained a number of women and they were provided the implied fact that Appellant was using defenseless women in his efforts to sell crack cocaine. That prejudice alone could have convinced female jurors to convict Appellant to get him off the streets and away from defenseless women.
 
 
 54
 Under the plain language of Fed.R.Evid. 401 and 402, evidence which tends "to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" is relevant, and "[a]ll relevant evidence is admissible." Fed.R.Evid. 401 & 402. Thus, the first question is whether the evidence regarding "bag women" is relevant. After his arrest, Driscoll gave a written statement to the agents in which he denied that he was involved in the drug transaction. Instead, he claimed that Princess, the woman in the car with him, was the dealer. Clearly, Agent Scott's testimony about bag women was relevant because it tended to show that Princess was a bag woman, not a dealer.
 
 
 55
 Federal Rule of Evidence 403 acts as a limitation on Rule 402's blanket statement regarding the admissibility of relevant evidence and excludes evidence if the probative value of that evidence is substantially outweighed by its potential prejudice. Rule 403 decisions are committed to the discretion of the trial court. In reviewing these decisions, an
 
 
 56
 appellate court must view the evidence in the light most favorable to its proponent, giving "the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value."
 
 
 57
 Moore, 917 F.2d at 233 (citation omitted). In addition, this court has declared that
 
 
 58
 [a]dmission of expert testimony is a matter within the broad discretion of the court, and a decision to admit such testimony is to be sustained unless manifestly erroneous. Law enforcement officers may testify concerning the methods and techniques employed in an area of criminal activity and to establish "modus operandi" of particular crimes. Knowledge of such activity is generally "beyond the understanding of the average layman."
 
 
 59
 Pearce, 912 F.2d at 163 (citations omitted). Driscoll has presented no reasons why the district court's decision to admit this testimony was manifestly erroneous.
 
 IV.
 
 60
 For the foregoing reasons, the judgments of conviction in both cases are AFFIRMED.
 
 
 
 *
 The Honorable Edward H. Johnstone, Senior United States District Judge for the Western District of Kentucky, sitting by designation